Filed 9/16/19 Modified and Certified for Publication 10/11/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARY MORRIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA,<br><br>    Defendant and<br>    Respondent. | B290693<br><br>(Los Angeles County<br>Super. Ct. No. BC612232) |

    APPEAL from an order of the Superior Court for the County of Los Angeles, Howard L. Halm, Judge. Affirmed.

    Rosner, Barry & Babbitt, Hallen D. Rosner and Arlyn L. Escalante for Plaintiff and Appellant.

    Bowman and Brooke, Brian Takahashi, Jimmy Y. Park and Adele V. Karoum; and SJL Law, Julian G. Senior, for Defendant and Respondent.

_____

Mary Morris appeals from the trial court's order awarding her attorney fees following the settlement of Morris's action against Hyundai Motor America (Hyundai) under the Song-Beverly Consumer Warranty Act (the Song-Beverly Act). (Civ. Code, § 1790 et seq.)  Morris sued Hyundai after she purchased a defective used Hyundai vehicle that Hyundai refused to repurchase.  The parties settled the litigation, with Hyundai agreeing to pay Morris $85,000, plus reasonable attorney fees and expenses.

After failing to reach agreement with Hyundai on the attorney fees amount, Morris moved for a fee award using the lodestar method[1] that consisted of a $127,792.50 base amount with a 1.5 multiplier, for a total of $191,688.75.  The trial court awarded $73,864 in fees.  Morris now contends the court abused its discretion in reducing her attorney fee award.  We affirm.

## PROCEDURAL HISTORY

1. *Morris's Complaint*

On March 3, 2016, Morris filed a complaint against Hyundai asserting causes of action under the Song-Beverly Act and the Magnuson-Moss Warranty Act stemming from Morris's purchase on June 30, 2014 of a used 2011 Hyundai vehicle for

---

[1]     Using the lodestar method to calculate attorney fees, "the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985; see *Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49.)

which Hyundai issued a warranty. Morris paid $35,183.60 for the car, including sales tax, fees, interest and other charges. Morris alleged the vehicle's interior, transmission, engine and electrical system had serious defects. She asserted Hyundai failed to conform her vehicle to its warranties after a number of repair attempts, and Hyundai wrongfully refused to replace her car or make restitution as required under the Song-Beverly Act. Her complaint sought restitution, an award of actual damages, a civil penalty of two times actual damages[2] and attorney fees and costs.

On April 11, 2017, the date the trial was to commence, the parties agreed to settle the matter for the sum of $85,000, which consisted of a full statutory "buy-back" of Morris's car, incidental and consequential damages, and a civil penalty. The settlement also provided that Morris would receive reasonable attorney fees and expenses to be determined by the court in the absence of an agreement by the parties.

2.  *Morris's Motion for Attorney Fees and Costs*

Morris moved for attorney fees and costs pursuant to Civil Code section 1794, subdivision (d). Morris argued her counsel were able to marshal their expertise and significant experience in lemon law cases to litigate Morris's case efficiently. However, Morris contended that Hyundai's obstreperous and aggressive positions in the litigation required extensive efforts by Morris's counsel, the Knight Law Group, including adding the law firm

---

[2]     The Song-Beverly Act authorizes a civil penalty of up to two times the amount of actual damages if the purchaser establishes the manufacturer's failure to comply with the Act's provisions was willful. (Civ. Code, § 1794, subd. (c).)

Altman Law Group as co-counsel in May 2016 to assist in the litigation.[3]

Morris contended Hyundai's improper objections and evasive responses to discovery requests required extensive "meet and confer" efforts. Further, Morris's counsel was required to prepare for and defend the depositions of Morris and her expert witness, and to prepare for and take the depositions of several Hyundai employees and Hyundai's expert witness. Morris's counsel also attended the inspection of Morris's vehicle as well as an unsuccessful mediation in February 2017.

Morris's counsel engaged in extensive preparation in anticipation of the trial set for April 2017, including: drafting 11 motions in limine and oppositions to Hyundai's 12 motions in limine; preparing witness and exhibit lists, proposed jury instructions, verdict forms, and subpoenas; reviewing deposition testimony; drafting an opening statement and outlines for witness examinations; and preparing Morris and her expert for their trial testimony. On the scheduled trial date, counsel appeared and participated in a settlement conference, which was successful.

Morris argued that lemon law cases such as hers are "rarely simple" and require specialized knowledge of consumer protections, the intricacies of automobiles, and manufacturers' and dealers' policies and protocols for repairs and legal compliance. Morris urged the trial court to factor into its analysis of the appropriate fee award the skill, knowledge and experience that led to an excellent result for Morris, namely a

---

[3]     We note, however, that the Altman Law Group is listed as co-counsel on the caption of Morris's original complaint filed in February 2016.

4

settlement figure amounting to nearly two and a half times the vehicle's purchase price.

Morris requested lodestar attorney fees of $127,792.50, consisting of $50,055 in fees incurred by seven attorneys at the Knight Law Group and $77,737.50 in fees incurred by four attorneys and one paralegal at the Altman Law Group. Morris requested the court apply a 1.5 multiplier to the lodestar figure to compensate her attorneys for the fact that the law firms had taken the matter on contingency and that payment for their work was delayed. She thus sought a total of $191,688.75 in attorney fees for 283.3 hours of work.

Morris's motion was supported by the declarations of the lead attorneys from each of the law firms, Steve Mikhov from the Knight Law Group and Bryan Altman from the Altman Law Group. Mikhov's declaration cited numerous consumer rights cases in which California courts awarded attorney fees for time billed by attorneys from Mikhov's firm and from the Altman Law Group, in most cases at similar rates to those the attorneys billed in the instant case. Altman's declaration attached an Attorney Fee Survey Report in support of his contention that the hourly rates charged by Morris's attorneys were reasonable and commensurate with the rates charged by other attorneys with comparable experience in consumer rights law.

3. *Hyundai's Opposition*

Hyundai opposed Morris's attorney fee motion, asserting Morris had failed to meet her burden to establish the reasonableness of the requested fee award for litigating this "very simple case." Hyundai's opposition was supported by a declaration from its attorney Brian Takahashi, who submitted a

5

spreadsheet with numerous, specific objections to Morris's attorneys' billing entries.

Hyundai disputed Morris's contention that Hyundai dragged out the litigation and was overly aggressive, contending the parties engaged in standard discovery and there were no discovery motions. Hyundai attached examples of discovery responses served by Morris's counsel to demonstrate that they were stock objections and responses that were virtually identical to those served in all the firms' other cases. Similarly, Hyundai submitted evidence that Morris's meet and confer letter was the same stock letter sent by her counsel in every case they litigated.

Further, Hyundai contended the amount sought in lodestar attorney fees was excessive, as much of the billing by Morris's attorneys was "inefficient, unreasonable, duplicative, exaggerated and/or not actually incurred." Hyundai pointed out that 11 different lawyers at two different firms worked on the case for Morris, with very little paralegal time. Hyundai noted the lack of any explanation in Morris's motion papers as to why two firms and so many attorneys were necessary to prosecute the case. In addition, Hyundai argued the firms had attorneys billing for work that paralegals should have done, driving up the cost substantially.

Hyundai also asserted that Morris's counsel appeared to have billed for what they believed the "value" of a task should be, as opposed to the actual time spent. Hyundai asserted this was the case with respect to the drafting of the complaint, discovery requests and responses, declarations, deposition notices, and other pleadings in the case, which varied from the firms' pleadings in other cases only in their caption, names of the plaintiff, and year, model, and identification number of the

6

vehicle. Hyundai further pointed to examples of duplicative billing among attorneys, specific excessive billing entries, billing in quarter-hour increments by the Altman Law Group instead of one-tenths, and vague billing entries that made it impossible to assess the actual value of the work.

Hyundai further contended Morris's attorneys had charged excessive hourly rates, considering the lack of complexity of the case. Hyundai noted the lead attorney for Hyundai charged only $245 per hour, while Morris's lead attorney, Altman, billed his time at $650 per hour. Further, Hyundai asserted that Mikhov unnecessarily billed at his $500 hourly rate to review virtually every pleading in the case. Referencing another lemon law case brought to trial by Mikhov's and Altman's firms, Hyundai noted the court limited their billing rates to a range of $175 to $400 per hour, and Hyundai argued the same range should apply in Morris's case. Hyundai objected to the admission of the Attorney Fee Survey Report attached to Altman's declaration, alleging it lacked foundation and constituted unreliable hearsay.

4. *Morris's Reply*

In her reply, Morris explained that the Altman Law Group was associated in because that firm's attorneys were trial specialists, and any resulting duplication of work would have been offset by the "gains in trial preparation efficiency." Morris further argued, without any supporting declaration or evidence, that the use of 11 attorneys on her case was reasonable and efficient because each attorney performed tasks in which he or she specialized. According to Morris, "[m]inimal time is spent for each attorney to review the file and learn the relevant facts of the case, while substantial time is saved from having to switch gears to become familiar with procedural rules and specific issues of

7

each phase of the case." Morris asserted that even though her counsel used "form documents" in the case, work was necessary to conform those templates to the actual facts of this case.

  5. *Tentative Ruling, Hearing, and Final Order on Attorney Fees*

Before the April 16, 2018 hearing on the motion for attorney fees, the trial court issued a tentative ruling.[4] The court acknowledged it was required to use the lodestar method to calculate Morris's fee award, but it found Morris's requested fee award required reductions. The court found that "[f]or a case that did not present particularly complex or unique issues, which did not require any discovery motions, and which did not go to trial . . . a reasonable number of attorneys is one partner and at most two associates/paralegals." The court thus included in its lodestar calculation the fees incurred by Mikhov and only two of the seven associates from Knight Law; and of the four lawyers from the Altman Group who billed time on the case, the court included the fees billed only by Altman and one associate. Out of a total of 283.3 hours of billed work, the court did not award any fees for 82.5 hours of work billed by six associates.

Further, the court found the stated hourly rates for each of the attorneys were not reasonable. It reduced Altman's rate from $650 to $500 per hour, and Mikhov's rate from $500 to $400 per hour. The court fixed each of the associate's rates at $300 per hour, thus reducing one associate's rate from $350 to $300 per hour, the second from $375 to $300 per hour, and the third from

---

[4] In its tentative ruling the court sustained Hyundai's objections to the fee survey attached to Altman's declaration as well as Morris's objections to select portions of Takahashi's declaration.

$450 to $300 per hour. The court granted the full amount of fees billed by the paralegal from the Altman Law Group. The result was a total lodestar calculation of $73,864, approximately 42.2 percent less than the requested lodestar award of $127,792.50.

The court declined to apply a multiplier, noting it was "not convinced . . . that [Hyundai] 'dragged' this case out for longer than necessary . . . . Further, the Court notes that this case does not present particularly complex or unique issues. It is a kind of case both [Morris's] and [Hyundai's] counsel have tried numerous times and involve similar issues, both legally and factually."

Addressing the court's tentative ruling during the hearing, Morris argued that the court's disallowance of fees incurred by six of the billing attorneys was arbitrary and would "result[] in cutting hours that it must be beyond dispute were actually . . . and reasonably incurred," such as the time spent defending Morris's deposition. Morris also argued that Hyundai had not shown any reasons that her attorneys' hourly rates should be reduced.

The court noted it was taking a very similar approach to that taken in another lemon law attorney fee award case cited in Mikhov's declaration that involved the same law firms on each side.[5] However, the court suggested Morris's attorneys were less efficient in prosecuting the instant case, which affected the court's determination of the reasonableness of the requested fees. The court stated as follows: "[I]n a case like this . . . which is similar to almost every other case that you have on your case list,

_____

[5] In that case, the same trial judge reduced Altman's fee from $650 to $550 but found Mikhov's requested $500 hourly rate to be reasonable.

there's a certain methodology in prosecuting these cases. There's a template that you would follow. . . . And I understand that it can't be done just by the partner. The partner needs help. And as I mentioned, two people, either both could be paralegals, or one could be an associate. . . . But I think two people at the very most is all that is needed and would make either the prosecution or the defense of that litigation efficient and productive. Just because attorneys' fees are provided for under the Song Beverly Act doesn't give any counsel cart[e] blanche to put unlimited people on the case doing different things, because every time that somebody new to the file picks the file up in order to do whatever the task is, there's a certain amount of built-in startup [time]. You have to figure out what's going on in the case, who's who, where things are located. You have to go through the file a little bit. So for every one of those 11 people that worked on the case, there was a little bit of that that was involved. . . . And that is duplicative. It's not a very efficient way of doing things." The court stated Morris had not provided a satisfactory explanation as to why 11 attorneys were needed to prosecute the case.

The judge further noted his own experience in private practice examining 30 to 50 bills a month to determine whether charges were reasonable and demonstrated efficiency. The court stated, "There has to be some constraint on the billable hours that are generated here because the key term under the Song Beverly is 'reasonable,' . . . . [I]t's not just actual."

After additional argument by Morris's counsel asserting that the court should not cut 100 percent of the fees billed by six of the associates simply to account for some degree of lost efficiency, the court remarked that Morris was requesting a fee award of $192,000 for a case that did not go to trial and settled

for $85,000.  The court asked Morris's counsel, "Don't you think that just on its face, that's a little much?"  The court went on to state, "[T]his is not Apple versus Samsung case.  This is a case that you handle on a daily basis.  This is the kind of case that your firm handles. . . .  And I can't conceive, lodestar or not, that you would get up to $192,000 and ask for that in a very serious way."  Further, the court reiterated, "[T]here's got to be a cutoff to what reasonableness means.  And the way I described it in my tentative ruling is what I think is reasonable under the circumstance[s]."

The court adopted its tentative ruling as its final decision.  The court thus awarded Morris attorney fees in the amount of $73,864 and costs in the amount of $13,068.96.

## DISCUSSION

I.    *Recovery of Attorney Fees Under the Song-Beverly Act*

"A prevailing buyer in an action under the Song-Beverly Act 'shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.'  (Civ. Code, § 1794, subd. (d); see *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 35 [(*Warren*)] ['[t]he "plain wording" of section 1794, subdivision (d) requires the trial court to "base" the prevailing buyer's attorney fee award "upon actual time expended on the case, as long as such fees are reasonably incurred—both from the standpoint of time spent and the amount charged"' (italics omitted)].)" (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493,

11

506 (*Hanna*).)  "By permitting prevailing buyers to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible."  (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 994; accord, *Warren, supra,* 30 Cal.App.5th at p. 35.)

Civil Code section 1794 """"requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable.  These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved.  If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount.  A prevailing buyer has the burden of "showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'"""""  (*Hanna, supra,* 36 Cal.App.5th at p. 507; accord, *Warren, supra*, 30 Cal.App.5th at p. 36; *Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 840; *Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470.)

"We review a trial court's order awarding attorney fees and costs under the Song-Beverly Act for abuse of discretion." (*Hanna, supra*, 36 Cal.App.5th at p. 507.)  """The '"experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is

12

of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"'"'" (*Goglin v. BMW of North America, LLC, supra,* 4 Cal.App.5th at pp. 470-471; accord, *Warren, supra*, 30 Cal.App.5th at p. 36; see *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 ["[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise. . . . The trial court may make its own determination of the value of the services"].) In particular, "the lodestar method vests the trial court with the discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation" (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449), and to determine the hourly rates that should be used in the lodestar calculus. (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 436-437 (*569 East*).)

II. *The Trial Court Did Not Engage in an Inappropriate Proportionality Analysis*

"While the trial court has broad discretion to increase or reduce the proposed lodestar amount based on the various factors identified in case law, including the complexity of the case and the results achieved, the court's analysis must begin with the 'actual time expended, determined by the court to have been reasonably incurred.' (Civ. Code, § 1794, subd. (d).) '[I]t is inappropriate and an abuse of a trial court's discretion to tie an attorney fee award to the amount of the prevailing buyer/plaintiff's damages or recovery in a Song-Beverly Act action.'" (*Hanna, supra,* 36 Cal.App.5th at p. 510, quoting *Warren, supra,* 30 Cal.App.5th at p. 37.) A "rule of proportionality" would make it difficult for individuals with

13

meritorious consumer rights claims to obtain redress from the courts when they cannot expect a large damages award. (See *Warren,* at p. 39.)

Morris contends the trial court engaged in a prohibited proportionality analysis in setting the attorney fee award. Specifically, she points to the following statement by the court during the hearing: "So this is [a request for] $192,000 for a case that you settled for $85,000 and didn't go to trial. Don't you think that just on its face, that's a little much?" Morris asserts the court improperly slashed the requested award by more than 42 percent, to $73,864, to render the award "more in proportion to the $85,000 damages."

Morris relies on *Warren* to argue that the court's remarks during the hearing require reversal because they show that the court improperly considered the proportion of the fee award to the damages award. In *Warren*, a lawsuit under the Song-Beverly Act went to trial, and the jury returned a verdict in the plaintiff's favor and awarded $17,455.57 in damages. (*Warren, supra*, 30 Cal.App.5th at p. 31.) The plaintiff filed a motion seeking $351,055.26 in lodestar attorney fees plus a multiplier of 1.5. The defendant claimed the number of hours and rates billed were excessive due to duplicative, inefficient work by three different law firms. (*Id.* at p. 33.)

At the hearing, "[t]he court noted there was 'a disconnect' between the verdict amount of '$17,000' and the over $500,000 in requested attorney fees, and said it believed its tentative award of $115,848.24 in attorney fees was 'generous.'" (*Warren, supra*, 30 Cal.App.5th at p. 33.) The court then stated, "'I'm not saying that [proportionality is] the basis of my ruling,'" but expressed that the disconnect between the verdict and the fee request did

14

not sit well with the court.  (*Id*. at p. 34.)  "In ruling on the motion, the court wrote:  'The three firms billed a total of $351,055.26.  This is an excessive amount for a non-complex case.  The court will exercise its discretion and reduce this amount to 33%, or $115,848.24, of the original requested amount.  This amount, *while still much more than the $17,455.57 award*, more accurately reflects the reasonable amount of attorneys fees in a case which was not particularly complex and which was handled by counsel experienced in this area of law.  Plaintiff has not demonstrated that this many attorneys, at these high rates, were necessary or reasonable to justify her requested billed amount.  Additionally, despite counsel[']s argument that they carefully avoided duplication between the 3 firms, the court is not convinced that the repetitiveness of these types of cases would necessarily require the amount of time requested.'  (Italics added.)"  (*Ibid.*)

On appeal, the court found that, although the trial court had expressed some valid reasons justifying a reduction, "the trial court's comments at the hearing and in its written ruling on the attorney fee motion indicate that the court applied a 33% negative multiplier to Warren's requested lodestar fees of $351,055.26, with at least the partial goal of arriving at an attorney fee award that was roughly proportional to or more in line with Warren's modest $17,455.57 damages award."  (*Warren, supra*, 30 Cal.App.5th at p. 39.)  The court held, "[W]hen a trial court applies a substantial negative multiplier to a presumptively accurate lodestar attorney fee amount, the court must clearly explain its case-specific reasons for the percentage reduction.  (*Kerkeles [v. City of San Jose* (2015)] 243 Cal.App.4th [88,] 102-

15

104 [(*Kerkeles*)].)[6]  If, as occurred here, the reasons for the reduction include tying the fee award to some proportion of the buyer's damages recovery, the court abuses its discretion." (*Id.* at p. 37.)

------

[6]      In finding the trial court was required to "clearly explain" its reasons for the sizeable reduction of the award, the court relied on *Kerkeles, supra,* 243 Cal.App.4th 88.  (See *Warren, supra*, 30 Cal.App.5th at p. 37; see also *id.* at p. 41 [in reliance on *Kerkeles*, finding it appropriate to "effectively appl[y] 'heightened scrutiny' to the court's selection of the 33% negative multiplier to Warren's lodestar figure"].)  However, *Kerkeles* concerned an award of attorney fees under 42 United States Code section 1988 that is subject to the more stringent federal standard requiring district courts to "'provide a reasonably specific explanation for all aspects of a fee determination.'"  (*Kerkeles, supra*, 243 Cal.App.4th at p. 102; see *id.* at p. 104 [holding that "the reasoning expressed in the court's order [awarding attorney fees] does not meet the *federal criterion* of a clear and specific explanation sufficient for meaningful appellate review" (italics added)].)  We disagree with the court in *Warren* that such a heightened standard is appropriate for appellate review of fee awards under the Song-Beverly Act.  Rather, "'"[w]e presume the trial court's attorney fees award is correct, and "[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated."'"'  (*Hanna, supra*, 36 Cal.App.5th at p. 507; accord, *Etcheson v. FCA US LLC, supra,* 30 Cal.App.5th at p. 840; see *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754-755 ["trial court has no sua sponte duty to make specific factual findings explaining its calculation of the fee award and the appellate courts will infer all findings to support the trial court's determination"].)

Unlike the trial court's written ruling in *Warren*, which suggested the relative proportion of the damages to attorney fees was a factor in the court's calculus, the trial court's final written order in the instant case did not suggest in any respect that the court reduced the attorney fee award based on the size of the settlement award. Rather, the trial court's order indicated a fee reduction was warranted because it was unreasonable to have so many lawyers staffing a case that did not present complex or unique issues, did not involve discovery motions, and did not go to trial. Further, the court found the attorneys' hourly rates to be unreasonably high.

Morris contends that, as in *Warren*, the trial court's comments during the hearing – suggesting that the total proposed fee was "a little much" considering the case settled for $85,000 and did not go to trial – betrayed that at least one of the court's intentions in reducing the fee award was to bring it more in line with the settlement amount. Given the court's clear expression in its final order of its reasons for the reductions, we will not speculate, based on a stray remark the court made at the hearing, that it had other, prohibited reasons that would require reversal. (See *Key v. Tyler* (2019) 34 Cal.App.5th 505, 539 [holding the court's "oral comments were not final findings and cannot impeach the court's subsequent written ruling"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 fn. 16 ["a judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances"].) Thus, we reject Morris's contention that the trial court applied a proportionality analysis in making its attorney fee determination.

17

III.    *The Trial Court Did Not Abuse Its Discretion by Cutting Fees Billed by Six of 11 Attorneys*

Morris contends the trial court arbitrarily cut 83.5 hours of reasonably incurred fees billed by six attorneys who worked on the case, citing concerns about inefficiencies and duplication, even when Hyundai did not object to these attorneys' time and billing entries in some instances. Morris notes the court did not reference any specific examples of inefficiencies or redundancies as a result of the number of attorneys staffing the case.

"A trial court may not rubber stamp a request for attorney fees, but must determine the number of hours reasonably expended." (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271.) In evaluating whether the attorney fee request is reasonable, the trial court should consider "'whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.'" (*Ibid.*) "Reasonable compensation does not include compensation for '"padding" in the form of inefficient or duplicative efforts. . . .' [Citations.] 'A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections.'" (*Ibid.*; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 ["trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation"].) "'[J]ust as there can be too many cooks in the kitchen, there can be too many lawyers on a case.'" (*Donahue,* at p. 272 [finding that "simultaneous representation by multiple law firms posed substantial risks of task padding, over-conferencing, attorney

18

stacking (multiple attendance by attorneys at the same court functions), and excessive research"].)

In *Warren*, although the appellate court reversed the trial court's order on attorney fees because the court appeared to have slashed the fee award in part to make it more proportional to the modest damages award, the appellate court found "the court's other reasons for selecting the negative 33% multiplier were appropriate." (*Warren, supra*, 30 Cal.App.5th at p. 40.) Those reasons included that 16 lawyers at three firms had billed a total of $351,055.26, an "'excessive amount for a non-complex case'" that was "'handled by counsel experienced in this area of law.'" (*Ibid.*) Further, the trial court found the plaintiff "'has not demonstrated that this many attorneys, at these high rates, were necessary or reasonable to justify her requested billed amount. Additionally, despite counsel[']s argument that they carefully avoided duplication between the 3 firms, the court is not convinced that the repetitiveness of these types of cases would necessarily require the amount of time requested.'" (*Ibid.*) The appellate court found the trial court was within its discretion to reduce the fee award based on "the excessive time spent on the 'not so complex case' by [plaintiff's] attorneys in the aggregate." (*Id.* at pp. 40-41.)

Plainly, it is appropriate for a trial court to reduce a fee award based on its reasonable determination that a routine, non-complex case was overstaffed to a degree that significant inefficiencies and inflated fees resulted.[7] The more unique issue

---

[7]     Morris contends that, contrary to the trial court's findings, her attorneys' "conveyor belt management style," in which each stage of litigation of a lemon law case is handled by a single attorney specializing in that stage, resulted in efficient billing.

19

presented here is whether the trial court's decision to cut entirely the fees for six billing attorneys, resulting in cutting 83.5 of 283.3 total hours of work – just under 30 percent of the total billed hours – was an appropriate way to remedy such inefficiencies and make the fee award a reasonable one.

In arguing that the trial court's methodology was not appropriate, Morris relies on *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266 (*Mountjoy*). In that case, the trial court reduced the total hours claimed by the plaintiffs' attorneys by 70 percent largely because the court found that over 70 percent of the billing entries were flawed, for reasons such as excessive time spent on the stated task, duplicative billing, or fees for unreasonable tasks. The appellate court found this reduction arbitrary because "there appears to be no reasonable basis for the conclusion that the total hours included in the 70 percent-plus time entries that were flawed in one or more ways was even reasonably close to 70 percent of the total time claimed. For example, it is possible that the hours included in the flawed time entries amounted to only 50 percent of total hours claimed, in which case the [plaintiffs] would have suffered a 20 percent reduction in compensable hours for hours that were

However, Morris failed to present evidence to the trial court of such streamlined practices, foreclosing any finding that the trial court abused its discretion in finding that Morris's counsels' practices were inefficient. (See *Mountjoy v. Bank of America* (2016) 245 Cal.App.4th 266, 278-279 [where plaintiff offered reasons on appeal for double-staffing of certain tasks but failed to "point to any evidence in the record in this case that that justification applied here. . . . no abuse of discretion has been shown in the trial court's determination that the services of the two attorneys were duplicative"].)

actually included in time entries that were *not* flawed." (*Id.* at pp. 280-281.) "An across-the-board reduction in hours claimed based on the percentage of total time entries that were flawed, without respect to the number of hours that were actually included in the flawed entries, is not a legitimate basis for determining a reasonable attorney fee award." (*Id.* at p. 282.)

*Mountjoy* is distinguishable. In that case, the trial court identified flaws of some sort in 70 percent of the attorneys' billing entries, but it never purported to assess the reasonable value of the attorneys' services or how many hours should be cut so that the fee award would reflect the reasonable services provided. By contrast, in the instant case, the trial court determined that having too many lawyers work on the case led to inflated bills, and its chosen remedy – not awarding fees for some of the attorneys – was designed to yield a revised lodestar figure that reflected a total amount of fees that were reasonably incurred.

Morris is correct that the trial court's methodology of cutting six attorneys' hours entirely resulted in cutting non-duplicative billing for some necessary tasks, such as defending Morris's deposition, attending the vehicle inspection, and attending a case management conference. However, at the hearing, the court made clear that its approach was designed to reduce the total award to the reasonable amount that would have been billed had there been an appropriate number of attorneys on the case. The court could properly have made an across-the-board reduction of 30 percent to accomplish the same purpose. (See *Warren, supra,* 30 Cal.App.5th at p. 41 ["when a """voluminous fee application"""" is made . . . the court may . . . """make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure""""].) The court got to

21

the same result by cutting particular attorneys' billings.  We are satisfied that the trial court did not abuse its broad discretion to determine the reasonable value of the professional services performed by Morris's attorneys.  (See *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1096 ["[t]he trial court may make its own determination of the value of the services"]; *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 625 ["the trial court . . . is not bound by the itemization claimed in the attorney's affidavit"].)

IV.    *Morris Has Shown No Abuse of Discretion in the Trial Court's Reductions of the Attorneys' Hourly Rates*

Morris asserts the trial court reduced the hourly rates for her attorneys without a reasonable basis for doing so.  She contends she submitted ample evidence, which Hyundai failed to rebut, that her counsel's rates were reasonable and commensurate with other consumer attorneys' rates.[8]  (See *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 156 [trial court abused its discretion in reducing counsel's hourly rates where "unrebutted declarations established the prevailing rates in the region for attorneys with comparable skills and expertise"].)

_____

[8]     Morris complains that the court erred in excluding the attorney fee survey attached to Altman's declaration.  However, Morris fails to present any argument that the basis for the ruling – that the survey was unauthenticated hearsay – was incorrect.  As such, she has forfeited the argument that the fee survey was wrongly excluded.  (*DP Pham LLC v. Cheadle* (2016) 246 Cal.App.4th 653, 674 [party forfeits argument by failing to adequately support it with argument and relevant legal authority].)

22

"In making its calculation [of a reasonable hourly rate], the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees [citation], the difficulty or complexity of the litigation to which that skill was applied [citations], and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." (*569 East, supra*, 6 Cal.App.5th at p. 437; see *Mountjoy, supra*, 245 Cal.App.4th at p. 272 [""'a reasonable hourly rate is the product of a multiplicity of factors . . . . [including] the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case"'''].)

In *Mountjoy*, the plaintiff complained that the trial court reduced her counsel's hourly rate to that of the much less experienced defense counsel. The appellate court found that the plaintiff had failed to carry her burden to show the court abused its discretion in reducing the rate where the court could have reasonably determined that a lesser rate was justified due to other factors besides experience. (*Mountjoy, supra*, 245 Cal.App.4th at pp. 272-273.)

Similarly here, even if Morris established that her attorneys' rates were generally commensurate with other consumer law attorneys with the same level of experience and skill, Morris ignores that there are a number of factors that the trial court may have taken into consideration in determining that reductions in the attorneys' hourly rates were warranted. The court reasonably could have reduced the rates based on its finding that the matter was not complex; that it did not go to trial; that the name partners were doing work that could have

23

been done by lower-billing attorneys; and that all the attorneys were doing work that could have been done by paralegals. (See *569 East, supra*, 6 Cal.App.5th at pp. 438-439 [finding billing rate reduction of senior attorney was justified where the attorney did "the yeoman's work" that would ordinarily be done by more junior associates with low billing rates].) Morris has not carried her burden to show an abuse of discretion in the trial court's reduction of the attorneys' hourly rates.

## DISPOSITION

The order awarding fees and costs is affirmed. Hyundai is to recover its costs on appeal.

STONE, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/11/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARY MORRIS,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>HYUNDAI MOTOR AMERICA,<br><br>    Defendant and Respondent. | B290693<br><br>(Los Angeles County<br>Super. Ct. No. BC612232)<br><br>**ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN APPELLATE JUDGMENT** |

THE COURT:

The opinion filed on September 16, 2019 and not certified for publication, is modified as follows:

On page 8, section 5, first paragraph, last sentence: "82.5" should be replaced with "83.5." The sentence should read as follows:

> Out of a total of 283.3 hours of billed work, the court did not award any fees for 83.5 hours of work billed by six associates.

The opinion in this case filed on September 16, 2019 was not certified for publication. Because the opinion meets the

standards for publication specified in California Rules of Court, rule 8.1105(c), the requests by Defendant and Respondent, as well as a non-party, pursuant to California Rules of Court, rule 8.1120(a) for publication are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the opinion be published in the Official Reports.

This order does not change the appellate judgment.

_____

PERLUSS, P. J.,          ZELON, J.,          STONE, J.[9]

_____

[9]      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.