Filed 2/29/16

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALVIN MOUNTJOY et al., | C077283 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201200116773CUFRGDS) |
| v. | |
| BANK OF AMERICA, N. A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Reversed.

Law Offices of Richard L. Antognini and Richard L. Antognini for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, Kerry W. Franich, and Jonah Vanzandt for Defendants and Respondents.

In seeking an attorney fee award in this wrongful foreclosure case, plaintiffs Calvin and Tracy Mountjoy sought a lodestar sum of $308,425 for 760.70 hours of attorney and law student work billed at hourly rates ranging from $450 to $200. Concluding that "well over 70% of the billing entries" submitted in support of the

1

attorney fee request were flawed in one or more respects, the trial court reduced the number of hours claimed by 70 percent, to 228.21. Thereafter, applying a "blended" billing rate of $260 per hour to the reduced number of hours, the court awarded the Mountjoys $59,334.60 in attorney fees.

On the Mountjoys' appeal from the fee award, we reject most of their arguments but conclude the trial court did abuse its discretion in basing the award on a 70 percent across-the-board reduction in the number of hours claimed. Even assuming the trial court was correct in finding that well over 70 percent of the time entries underlying the fee request were flawed in one manner or another, there is no reasonable basis for concluding that the time entries the court found were flawed actually included 70 percent of the total time for which the Mountjoys sought compensation. Thus, the trial court's reduction in compensable hours was arbitrary and may have swept too broadly, denying the Mountjoys compensation for time claimed in billing entries that were *not* flawed. For this reason, we will reverse the order on the Mountjoys' fee motion and remand the matter to the trial court for further consideration.

FACTUAL AND PROCEDURAL BACKGROUND

The Mountjoys owned a home in Elk Grove that was subject to a loan secured by a deed of trust. In May 2011, following a nonjudicial foreclosure sale of that property and the commencement of an unlawful detainer action against them, the Mountjoys contacted attorney Dennise Henderson. In August 2011, Henderson filed a chapter 7 bankruptcy petition for the Mountjoys to stop the unlawful detainer action. Eventually, the bankruptcy stay was lifted, and a second unlawful detainer action was commenced in December 2011.

In January 2012, the Mountjoys commenced the present action by filing a verified complaint against various parties alleging 12 causes of action. On the Mountjoys' motion, the second unlawful detainer action was consolidated with this action.

2

Defendants Bank of America, N.A., Recontrust Company, N.A., Mortgage Electronic Systems, Inc. (MERS), and Federal National Mortgage Association[1] unsuccessfully demurred to the complaint and unsuccessfully moved for summary judgment. At a mandatory settlement conference in January 2014, the case settled, with the bank agreeing to pay the Mountjoys $395,000. The written stipulation for settlement provided that "[a]ttorneys fees and costs, if not agreed, shall be determined by noticed motion."

Following the Mountjoys' receipt of the settlement proceeds, they filed a motion for attorney fees and costs, seeking a lodestar sum of $308,425.00 in fees for 760.7 hours of work by their two attorneys -- Henderson and Tonya Nygren. The motion was supported by a 41-page "Billing Detail" printout showing the time entries for the services provided. The total fees were calculated based on an hourly rate of $450 for Henderson and two hourly rates for Nygren: $350 for her work as an attorney and $200 for her work prior to becoming an attorney.[2]

In opposition to the fee motion, the bank contended the fee request was "not merely excessive" but "outrageous." The bank objected to the hourly rates sought and the total hours claimed. On the latter point, the bank asserted (among other things) that excessive time was spent on routine tasks, the two attorneys billed exorbitant hours on the same tasks, and many of the billing entries were "improperly block-billed or otherwise vague." The bank argued that the lodestar should be slashed to something more closely approaching the approximately $51,000 the bank's attorneys billed on the case (not including the fee motion).

---

[1] For ease of reference, we will refer to all of the defendants jointly as the bank.

[2] The fee motion also requested a multiplier of 4.0, but at the hearing on the motion, Henderson dropped the request for a multiplier.

The trial court agreed with the bank's arguments on the number of hours claimed and reduced those hours by 70 percent across the board, explaining as follows: "Approximately half of [the Mountjoys'] pleading amounted to unnecessary general legal argument warranting a reduction in the time it took to prepare that filing. Approximately half of 'facts' [the Mountjoys] crafted in Opposition to the summary judgment motion . . . were improper. Perhaps most critically, well over 70 % of the billing entries fall into one or more of the following categories: prohibitively vague 'block billing,' excessive time spent on the stated task (including but not limited to drafting the complaint and opposition to summary judgment motion and document review tasks discussed above), double billing where two attorneys completed the same task, attorney fees for non-attorney work, fees for filings that did not actually occur in this case, and fees for otherwise unreasonable tasks. [¶] In light of the foregoing and the other various reasons stated in Defendants' Opposition, the Court in its discretion reduces [the Mountjoys'] requested 'hours worked' by 70% . . . to a more reasonable total of 228.21." (Bold text omitted.)

The trial court also found that the Mountjoys had "not met their burden of showing that their requested hourly rates are reasonable," so the court applied a "blended" billing rate of $260, drawn from the rate billed by the bank's attorney, finding that rate was "reasonable and more closely comports with those in the local community, at least in the Court's experience."

Multiplying the reduced hours by the reduced hourly rate, the court calculated the Mountjoys' reasonable attorney fees as $59,334.60 and awarded them that amount. The Mountjoys timely appealed.

DISCUSSION

On appeal, the Mountjoys contend the trial court abused its discretion in awarding them only $59,334.60 of the $308,425 in attorney fees they requested. As explained more fully below, we reject most of the Mountjoys' arguments, but we do agree the trial

4

court abused its discretion in imposing a 70 percent across-the-board reduction of the hours claimed. Accordingly, we will reverse and remand.

I

*General Principles Governing Attorney Fee Awards*

"[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132.) "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Id.* at p. 1132.) "[A]nchoring the calculation of attorney fees to the lodestar adjustment method ' "is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." ' " (*Ibid.*) "When using the lodestar method to calculate attorney fees . . . , the ultimate goal is 'to determine a "reasonable" attorney fee . . . .' " (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985.) "The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum*, at p. 1132.)

II

*Hourly Rate*

With a single exception, the Mountjoys' arguments on appeal all relate to the trial court's reduction of the "time spent" element of the lodestar calculation.  The one exception comes at the end of their opening brief, when they complain in a single paragraph that "the trial court set Dennise Henderson's billing rate at $260 as part of a 'blended' billing rate."  The Mountjoys suggest this was an abuse of discretion because $260 was the hourly rate of Clayton Gaddis, the bank's principal attorney, and, according to the Mountjoys, "[t]he trial court failed to consider the differences between Ms. Henderson and Mr. Gaddis's experience" -- specifically, that Henderson had been practicing for 14 years while Gaddis had been practicing only five, and that Henderson had tried 35 cases while Gaddis had not tried any as first chair.  From these differences, the Mountjoys draw the conclusion that "[i]f Mr. Gaddis was worth $260 an hour, Ms. Henderson was worth far more."

We find no merit in this argument.  " '[A] reasonable hourly rate is the product of a multiplicity of factors. . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.' " (*Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1003-1004, quoting *Copeland v. Marshall* (D.C.Cir.1980) 641 F.2d 880, 892.)  Here, in arguing that the trial court undervalued Henderson's services by applying an hourly rate of $260 to those services, the Mountjoys point to only *two* relevant factors:  years in practice and trial experience.  Despite the difference between Henderson and Gaddis with respect to these two factors, it is possible the trial court could have reasonably determined that Henderson's services were only worth the same rate billed by Gaddis based on *all* of the "multiplicity of factors" that go into determining a reasonable hourly rate.  Because they fail to address any of the other applicable factors to show that any such conclusion would still be an abuse of discretion, the Mountjoys have failed to carry their burden of showing

6

the trial court abused its discretion in selecting $260 as a reasonable rate for Henderson's services.

## III

*Time Spent*

The remainder of the Mountjoys' arguments relate to the "time spent" element of the lodestar calculation. We address each argument in turn.

### A

*Reference To Opposing Counsel's Fees*

The Mountjoys contend the trial court "erred by using opposing counsel's billing records as the sole basis for reducing [their] fee request by 70%." (Bold text omitted.) The factual premise of this argument is (as variously stated by the Mountjoys) that (1) "[t]he hours charged by [the bank]'s counsel were . . . the driving force behind the trial court's 70% cut," (2) "[t]he driving factor [in the court's reduction of the "time spent" element of the lodestar calculation] was [the court's] belief that [the] hours [spent by the bank's counsel], rather than the hours for the Mountjoys' counsel, must control," and (3) the court "use[d] the billing records of [the bank's] counsel as the dominant factor in setting the attorney's fee award." According to the Mountjoys, "[b]y allowing defense counsel's billing records to control its analysis, the trial court 'started from a mistaken premise' " and thereby abused its discretion.

This argument has no merit because the factual premise is false -- the trial court did *not* use the time spent by the bank's counsel as the "driving force" or "dominant factor" in the court's analysis of the time spent by the Mountjoys' attorneys. Instead, the court reduced the time claimed by the Mountjoys' attorneys by 70 percent because the court found that "well over 70% of the billing entries" offered by the Mountjoys' attorneys were objectionable for one reason or another. It was only *after* deciding to reduce the hours claimed on this basis that the court observed that the reduced total (228.21 hours) "more closely approximates defense counsel's purported 224 hours

7

worked, which serves as a 'cross-check' for the claimed hours." (See *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 272 ["A comparative analysis of each side's respective litigation costs may be a useful check on the reasonableness of any fee request"].) Thus, the trial court did not start from a mistaken premise in evaluating the hours spent by the Mountjoys' attorneys.

B

*Failure To Consider Certain Factors*

The Mountjoys next contend the trial court erred because the court did not consider "the novelty of the case, its difficulty, and the success of the prevailing party" in setting the lodestar. In support of this argument, the Mountjoys cite *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, which in turn quoted *Berry v. Chaplin* (1946) 74 Cal.App.2d 669, as follows: "In determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding, the court may and *should* consider 'the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded . . . ; the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed.' " (*Hadley*, at p. 682, quoting *Berry*, at pp. 678-679.)

The flaw in this argument is that neither *Hadley* nor *Berry* applied the lodestar method of calculating a reasonable attorney fee award; accordingly, neither of those cases stands for the proposition that the factors mentioned must be considered in setting the lodestar, which (as we have seen) is the product of the hours reasonably spent on the case times a reasonable hourly rate of compensation. Instead, under the lodestar method, the factors the Mountjoys contend the trial court ignored are to be taken into account in deciding whether to apply a multiplier to the lodestar figure. For example, in *Ketchum*, the Supreme Court explained that the lodestar "may be adjusted by the court based on

8

factors including . . . the novelty and difficulty of the questions involved." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.) The degree of success achieved is likewise a proper factor for consideration in deciding whether to adjust the lodestar figure. (See *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 61.)

Here, Henderson withdrew the Mountjoys' request for a multiplier to be applied to the lodestar at the hearing on the fee motion. Accordingly, the Mountjoys cannot now be heard to complain that the trial court erred in failing to consider various factors that might have justified an upward adjustment to the lodestar.

C

*Specific Criticisms By The Trial Court*

The Mountjoys next challenge a number of specific criticisms the trial court had for their attorneys' billing records, contending those criticisms are not based on "the facts and reason." Again, we address each separate issue in turn.

1.      *The Complaint*

The trial court noted that the Mountjoys' attorneys "purportedly spent 41.5 hours to draft the [complaint] (totaling $18,675 in fees)," which the court determined was excessive because "approximately 25 pages of the 55 pages of allegations are general background 'allegations' -- perhaps, more accurately, arguments -- regarding MERS, the securitization of loans, the financial crisis and the roles of lenders, etc." and "not factual allegations tailored to [the Mountjoys'] claims in this particular case." The court concluded "it was unnecessary to spend over 40 hours on a pleading largely comprised of improper legal argument and generic background 'facts.' "

The Mountjoys contend the trial court's criticism was not justified because "the time records show . . . that this [41.5 hours of] work includ[ed] interviewing the clients, doing research on possible causes of action, and *then* drafting the complaint." (Italics added.) They also note that if 25 pages of the complaint were unnecessary or irrelevant, then "at least 30 pages . . . contained relevant allegations," and they contend "[i]t takes

9

time to draft 30 pages of a complaint" and "[t]he trial court's ruling did not account for this reality."

Contrary to the Mountjoys' argument, the time records do *not* show that the 41.5 hours the trial court found had been spent on drafting the complaint included other tasks, such as interviewing and researching.  We have identified 11 time entries relating to the complaint for which the total amount of time equals 41.5, as follows:

| "12/22/2011" | "Client File Work:  Prep Complaint" | 4.25 hours |
| "12/30/2011" | "Client File Work:  Prep Complaint" | 6.50 hours |
| "01/01/2012" | "Client File Work:  Review procedural status" | .50 hours[3] |
| "01/02/2012" | "Client File Work:  Prep Complaint" | 6.00 hours |
| "01/05/2012" | "Client File Work:  Prep Declarations for Complaint" | 2.50 hours |
| "01/06/2012" | "Law Student File Work:  Organize file for UD and filing Complaint; review timeline of events for Complaint" | .50 hours |
| "01/08/2012" | "Client File Work:  Complaint" | 6.75 hours |
| "01/08/2012" | "Client File Work:  Review Complaint and mark final edits" | 7.25 hours |
| "01/08/2012" | "Law Student File Work:  Review Complaint and final edits" | 1.50 hours |
| "01/09/2012" | "Law Student File Work:  Complaint- final preparation of complaint including print file serve" | 5.75 hours |

_____

**3**      While the description in this time entry does not expressly mention the complaint, it is the only entry contemporaneous with those that do mention the complaint that was for the right amount of time to bring the total to 41.5 hours.

These appear to be the time entries on which the trial court relied for its criticism, and *none* of them includes any time for interviewing or researching. Instead, *those* hours appear in *other* time entries on December 22 and 27, 2011. Thus, the trial court did not err in determining that the Mountjoys' attorneys spent over 40 hours preparing the complaint.

As for the Mountjoys' assertion that it "takes time" to draft even a 30-page complaint and the trial court's ruling "did not account for this reality," we find no basis for reversal in this assertion. The Mountjoys have not shown that the trial court denied them *all* compensation for the time spent preparing the complaint. Of course, given the nature of the trial court's ruling -- a 70 percent across-the-board reduction in the hours claimed -- it is not possible to say exactly how many hours the trial court determined were compensable for the preparation of the complaint, but that is an issue we address hereafter. For now, it is sufficient to conclude that the Mountjoys have not shown any error in the trial court's assessment that the time spent preparing the complaint was excessive.

2.    *The Answer*

The trial court found the 2.75 hours spent "to shephardize Defendants' Answer" was excessive, especially given that the answer did not cite any cases, "making it unclear what shephardizing could have been done." The Mountjoys object to this criticism because the pertinent time entry "should be read to bill 2.75 hours to review and 'Shephardize' the answer," which "was 21 pages long and asserted 16 affirmative defenses" and "admitted or denied each paragraph of the Mountjoy complaint," which was verified. According to the Mountjoys, it "easily could take 2.75 hours" "to review each paragraph of the answer to learn what allegations [the bank] admitted and what allegations it denied."

We share the trial court's confusion regarding the supposed "shephardizing" of the answer, but we also note that the Mountjoys are correct about the nature of the time

11

entry:  the entry specifically covers *review* of the answer as well as the supposed "shephardizing."  We also agree with the Mountjoys that the task of evaluating the specific responses (admit, deny, or some combination of both) to each of the 280 paragraphs of the complaint to determine exactly what allegations the answer placed at issue in the case could easily have consumed several hours.  Thus, notwithstanding the inexplicable reference to "shephardizing" the answer, we agree that the trial court abused its discretion in determining that this particular time entry was excessive.

       3.     *Summary Judgment Motion*

      The trial court concluded that the "almost 150 hours" the Mountjoys' attorneys spent opposing the summary judgment motion "was excessive, especially given the defects in the construction of most of the 35 'facts' presented in [the Mountjoys'] Separate Statement of Additional Material Facts, which included lengthy deposition excerpts and verbose multi-part argument framed as 'fact.' "  The Mountjoys object to this criticism because the court did not:  (1) "discuss the 13 issues the motion raised," (2) "mention the fact that the motion cited 74 cases and 19 statutes," (3) "consider the lengthy declarations (a total of 109 pages, with exhibits)," or (4) "take into account the lengthy request for judicial notice."  We must presume, however, that the trial court *did* consider these matters and take them into account in reaching its conclusion, even though the court may not have mentioned or discussed them in its written ruling.  This is so because " '[a] judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' "  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  Here, the record is silent as to whether the trial court considered the various factors the Mountjoys mention, so we must presume the court did consider them.  Inasmuch as the Mountjoys have not pointed to anything in the

12

record that overcomes this presumption, it follows that the Mountjoys have shown no error in the trial court's assessment of the time spent on the summary judgment motion.

4.  *Amended Complaint*

The trial court concluded it was unreasonable for the Mountjoys to seek compensation for 5.5 hours spent preparing an amended complaint when no such complaint was ever filed. The Mountjoys object to this criticism, contending this time was not unreasonably spent because "[i]t is logical" that the Mountjoys' attorneys researched and prepared the amended complaint while preparing their opposition to the demurrer to the original complaint, so they would "be able to explain to the trial court how they could amend if the court upheld the [bank's] demurrer." According to the time records, however, that was not the case. The demurrer was filed in April 2012 with a hearing set for September. There are two time entries in April for reviewing the demurrer, then there is one time entry in August for 2.50 hours to review the demurrer and research case law. After that, there are five more time entries in August, for a total of 10.25 hours, to prepare the response to the demurrer (along with some further research). Finally, on August 31, the opposition to the demurrer was filed, and at least nine more hours were billed that day related to the demurrer. Nowhere in their opposition to the demurrer, however, did the Mountjoys ask for leave to amend or suggest how the complaint might be amended to address any flaw identified in the demurrer. Moreover, it was not until September 20 -- the day after the reply was filed in support of the demurrer -- that the Mountjoys' attorneys spent the 5.5 hours preparing an amended complaint. And it was not until September 23 that the Mountjoys' attorneys actually reviewed the reply.

From the foregoing facts, it is readily apparent that the 5.5 hours the trial court found were unreasonably spent preparing an amended complaint were *not* part of the preparation of the opposition to the demurrer, as the Mountjoys now argue it logically

13

could have been.  Accordingly, the Mountjoys have shown no error in the trial court's assessment of the time spent preparing the amended complaint.

     5.    *Two Attorneys*

The trial court found that some of the attorney fees the Mountjoys sought were duplicative because their two attorneys "billed for completing the same tasks and communications," as itemized in the bank's opposition to the fee motion.[4]  The Mountjoys object to this criticism because the trial court "never explained why it believed that they needed only one lawyer."  The Mountjoys then offer various reasons why "two lawyers often make sense" and complain that "[t]he trial court did not consider these possible justifications."  The Mountjoys also contend that the court "did not take into account the fact that during the history of the case six lawyers worked to defend [the bank]."

Based on the foregoing, the Mountjoys have not shown any error in the trial court's determination that the fees sought included duplicative fees for the services of two attorneys.  First of all, the "possible justifications" suggested by the Mountjoys largely do not address the specific duplicative services enumerated by the bank in its opposition and incorporated by the trial court into its ruling on the fee motion.  The one exception is attendance at a deposition.  On this subject, however, the Mountjoys present only an *abstract* justification as to why the attendance of two attorneys at a deposition may be necessary.  Specifically, they argue that "[o]ne lawyer organizes documents and keeps notes on the deponent's answers," while "[t]he other asks the questions."  But the Mountjoys do not point to any evidence in the record in this case that that justification

---

**4**    The bank identified six matters on which, in its view, both of the Mountjoys' attorneys billed "exorbitant" time, as follows:  (1) reviewing and opposing the summary judgment motion; (2) trial preparation; (3) attending two depositions; (4) reviewing a deposition transcript; (5) opposing the demurrer; and (6) reviewing a document production.

14

applied here. In other words, there is no *evidence* that one of the Mountjoys' attorneys was solely responsible for conducting the deposition examination, while the other was responsible for organizing documents and taking notes. In the absence of any such evidence, no abuse of discretion has been shown in the trial court's determination that the services of the two attorneys were duplicative in this regard.

As for the assertion that "six lawyers worked to defend [the bank]," that point alone is worthless, because the Mountjoys make no effort to show that the six attorneys who worked on the defense case *performed duplicative tasks*. Absent such a showing, the comparison offered by the Mountjoys has no tendency to show error in the trial court's conclusion that the Mountjoys' attorneys billed for unnecessarily duplicative services.

6. *Block Billing And Vagueness*

The trial court concluded that the Mountjoys' attorneys "largely 'block billed' and often completed only the most general and vague descriptions of their time entries." The Mountjoys object to both aspects of this criticism, contending "[t]he entries . . . were not true 'block bill' entries" and the bank's "counsel also used vague time descriptions."

We agree with the Mountjoys that the time entries their attorneys submitted do not qualify as block billing. Block billing occurs when "a block of time [is assigned] to multiple tasks rather than itemizing the time spent on each task." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010.) The Mountjoys' attorneys' time entries do not encompass multiple tasks.

On the issue of vagueness, however, the Mountjoys do not attempt to refute the court's characterization; instead, they simply argue that the bank's attorneys used vague time descriptions too. But even if that is so, it makes no difference. That the bank's attorneys may have used vague time descriptions to bill the bank for their services does not mean the Mountjoys' attorneys were entitled to premise their request for an attorney fee award on their own equally vague descriptions.

15

# D

## *70 Percent Across-The-Board Reduction*

Having considered all of the foregoing arguments, we have found only two aspects in which the trial court can be said to have erred or abused its discretion:  (1) in finding that the 2.75 hours the Mountjoys' attorneys billed for reviewing Bank of America's answer to the complaint was excessive; and (2) in finding that the Mountjoys' attorneys "largely 'block billed.' "  It is impossible for us to say, however, just how these erroneous aspects of the trial court's ruling prejudicially effected the fee award the court made -- if at all -- because of the way the trial court determined the fee award, which is the subject of the Mountjoys' final complaint.

As we have noted, the trial court ultimately reduced the time claimed by the Mountjoys' attorneys by 70 percent largely because the court found that "well over 70% of the billing entries fall into one or more of the following categories:  prohibitively vague 'block billing,' excessive time spent on the stated task (including but not limited to drafting the complaint an opposition to summary judgment motion and document review tasks discussed above), double billing where two attorneys completed the same task, attorney fees for non-attorney work, fees for filings that did not actually occur in this case, and fees for otherwise unreasonable tasks."  The Mountjoys complain about this approach because the trial court "did not break out how many hours it thought were devoted to double billing the same tasks, work on non-attorney tasks, excessive billing for working on the complaint or summary judgment opposition, or work on documents that were not filed."

We agree the trial court's approach was flawed, although not for the reason the Mountjoys contend.  The Mountjoys suggest that the trial court was obligated to calculate exactly how many of the claimed hours the court believed were not compensable based on the various flaws the court found in the time entries, then subtract that sum from the total hours claimed to come up with the number of compensable hours.  We disagree.

16

One court has said that "counsel may not submit a plethora of noncompensable, vague, block-billed attorney time entries and expect particularized, individual deletions as the only consequence." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1329.) It is the obligation of the party (and attorney) seeking the fee award "to prune the fee request to comply with the law," and the party (and attorney) cannot "transfer that responsibility onto the trial court." (*Ibid.*)

Even so, that does not mean it is permissible for a trial court -- when faced with a plethora of flawed attorney time entries -- to engage in an across-the-board reduction of hours of the kind the trial court imposed here. Essentially the court here determined that because well over 70 percent of the billing entries suffered from one or more flaws, it was appropriate to simply reduce the total hours claimed by 70 percent. The problem with this approach is that there appears to be no reasonable basis for the conclusion that the total hours included in the 70 percent plus time entries that were flawed in one or more ways was even reasonably close to 70 percent of the total time claimed. For example, it is possible that the hours included in the flawed time entries amounted to only 50 percent of total hours claimed, in which case the Mountjoys would have suffered a 20 percent reduction in compensable hours for hours that were actually included in time entries that were *not* flawed. That is not acceptable. The trial court has broad discretion in ruling on a fee request, but that ruling cannot be arbitrary, and a 70 percent reduction in hours claimed based on the conclusion that more than 70 percent of the time entries are flawed, without any correlation shown to the number of hours claimed on the flawed entries, is arbitrary.

From the trial court's written ruling, it appears the court may have been under the impression that *Christian Research Institute* authorizes the kind of "across-the-board reduction of hours" the court imposed here. Not so. In *Christian Research Institute*, the trial court did not perform an across-the-board reduction based on an assessment of the percentage of time entries the court found were flawed. In that case, the defendant

sought a fee award of over $250,000 based on 638.6 hours allegedly spent on a special motion to strike and a resulting appeal. (*Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at p. 1319.) Finding the claimed hours were excessive, the trial court instead "awarded counsel $21,300 in attorney fees, based on 25 hours for the motion, 40 hours for the appeal, and six hours of attorney time for the fee motion." (*Id.* at p. 1320.) The appellate court affirmed. (*Id.* at p. 1330.) Thus, *Christian Research Institute* does not support the kind of reduction imposed here, which was a percentage reduction in hours based on the percentage of flawed time entries, without respect to the number of hours that were actually included in the flawed entries.

Moreover, the trial court's flawed approach here cannot be justified by the fact that the number of hours the court calculated based on its 70 percent across-the-board reduction turned out to "closely approximate[]" the hours the bank's attorneys purportedly spent on the case. Although, as we have noted, "[a] comparative analysis of each side's respective litigation costs may be a useful check on the reasonableness of any fee request" (*Donahue v. Donahue*, *supra*, 182 Cal.App.4th at p. 272), such a comparison, by itself, cannot establish the reasonableness of a particular fee award. Moreover, any such comparison requires "analysis," and here even a facile analysis shows that the number of hours the bank's attorneys spent on the case does not necessarily serve as a fair reflection of how many hours the Mountjoys' attorneys could have reasonably spent on the matter. This is so because, if nothing else, the bank's attorneys did not begin working on the case until January 2012, after the complaint was filed and served, whereas the time claimed by the Mountjoys' attorneys began in May 2011, when the Mountjoys first hired them to stave off the unlawful detainer action that followed the bank's foreclosure sale of the Mountjoys' home.

In the end, we do not challenge the established proposition that "[t]he' "experienced trial judge is the best judge of the value of professional services rendered in his court;" ' " however, we conclude that the trial court's method of

18

determining the reasonable value of those services was " ' "clearly wrong." ' " (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132)  An across-the-board reduction in hours claimed based on the percentage of total time entries that were flawed, without respect to the number of hours that were actually included in the flawed entries, is not a legitimate basis for determining a *reasonable* attorney fee award.  Accordingly, the trial court here abused its discretion by imposing such a reduction to determine that the Mountjoys' attorneys should be compensated for only 228.21 hours of work on the matter.  Thus, we will reverse the fee award and remand the case to the trial court for further consideration in light of this opinion.

## DISPOSITION

The order partially granting and partially denying the Mountjoys' motion for attorney fees is reversed, and the case is remanded to the trial court with instructions to reconsider the fee request in light of this opinion.


/s/                                          
Robie, Acting P. J.


We concur:


/s/                                          
Murray, J.


/s/                                          
Duarte, J.


19