Filed 4/1/20 Certified for Publication 4/24/20 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LORIK MIKHAEILPOOR, | B293987 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC611197) |
| v. | |
| BMW OF NORTH AMERICA, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Randolph M. Hammock, Judge.  Affirmed.

————————————

Rosner, Barry & Babbitt, Hallen D. Rosner and Arlyn L. Escalante for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Thomas M. Peterson and Mark W. Allen for Defendants and Respondents.

————————————

Lorik Mikhaeilpoor (Mikhaeilpoor) appeals from the trial court's order awarding her attorney fees following the trial of her action against BMW of North America LLC and Finchey Corporation of California (collectively, BMW) under the Song-Beverly Consumer Warranty Act (the Song-Beverly Act). (Civ. Code, § 1790 et seq.)[1]  Mikhaeilpoor sued BMW after she purchased a defective 2013 BMW 328i that BMW was unable to repair.

## FACTUAL AND PROCEDURAL SUMMARY

### A. *Mikhaeilpoor's Complaint*

On February 22, 2016, Mikhaeilpoor sued BMW and Finchey Corporation of California (erroneously named in the complaint as Pacific BMW), an auto dealership, asserting causes of action under the Song-Beverly Act stemming from her September 13, 2014 lease of the 2013 BMW 328i for which BMW had issued a warranty.  Mikhaeilpoor alleged that defendants:  (1) failed to promptly replace her car or make restitution, in violation of section 1793.2, subdivisions (a)(2) and (d)(1); (2) failed to commence repairs aimed at conforming the car to its warranty, in violation of section 1793.2, subdivision (b); (3) failed to make available service and repair facilities (including parts and literature) sufficient to effectuate repairs, in violation of section 1793.2, subdivision (a)(3); (4) breached the express warranty, as defined in section 1791.2, subdivision (a); and (5) breached the implied warranty of merchantability, as defined in section 1791.1.  Plaintiff's complaint sought restitution, an award of actual damages, a civil penalty of two times actual damages and attorney fees and costs.

---

[1] Unless otherwise specified, subsequent statutory references are to the Civil Code.

### B. *The Trial*

The trial commenced on February 21, 2018, and spanned six days. On February 28, 2018, the jury returned a special verdict in favor of Mikhaeilpoor. The jury awarded $35,805.08, comprised of $17,902.54 in compensatory damages and $17,902.54 in civil penalties.

### C. *Mikhaeilpoor's Motion for Attorney Fees*

On June 8, 2018, Mikhaeilpoor filed a motion for attorney fees pursuant to section 1794, subdivision (d), seeking $344,639. This figure consisted of $226,426, plus a 0.5 multiplier enhancement (totaling $113,213), and $5,000 for addressing the attorney fee resolution process.

The fee motion was accompanied by declarations from Payam Shahian, the managing attorney for Mikhaeilpoor's trial counsel, and Christine Haw, lead trial counsel. Shahian's declaration contained a bevy of information about his credentials and experience in unrelated Song-Beverly Act cases where his clients were awarded fees. Shahian's declaration also included 18 exhibits comprised of minute orders and notices of rulings on fee motions in unrelated cases; this despite the fact that no fees were billed for services by Shahian. Shahian's declaration also identified 10 attorneys who worked on this case along with their proffered billing information: Gregory Yu ($495 per hour), Jacob Cutler ($385 per hour in 2016, $395 per hour in 2017, and $410 per hour in 2018), Benjamin Beck ($400 per hour), Christine Haw ($365 per hour in 2017 and $375 per hour in 2018), Eleazar Kim ($350 per hour in 2017 and $370 hour in 2018), Yoon Kim (former attorney) ($365 per hour), Michael Robinson (former attorney) ($595 per hour), Heather Rodriguez (former attorney) ($325 per hour), Carey Wood ($370 per hour in 2017 and $375 per hour in

3

2018), Armig Khodanian (former attorney) ($325 per hour). Shahian's declaration also attached a copy of the billing records for Mikhaeilpoor's trial counsel.

The fee motion was opposed because: the billing records vastly overstated the work performed; the hourly rates were excessive; and an 0.5 multiplier adjustment was unwarranted. The defense argued that fees should be reduced by at least $83,206.05, and the proffered hourly billing rates of $325 to $595 were not based on market value.

Mikhaeilpoor replied, defending the amounts claimed. Before hearing the motion, the trial court issued a tentative ruling awarding $94,864 in attorney fees: $95,900 less an offsetting amount owed to defendants.

The court heard the motion on July 31, 2018. During argument, Judge Hammock explained that he "went through all the bills" and was "aghast" that counsel sought $343,000 in fees. He "saw the motions, the discovery motion," and "the motion for terminating sanctions, which was much ado about nothing." He found before him "a very simple case, straightforward trial," and "not a complicated case."

In assessing fees, the court "looked at all the bills" and then "calculated what [it] thought was reasonable." The court understood that it had the "ability to exercise [its] sound discretion," but could not "do it arbitrarily." The court emphasized that its analysis was not based on limiting plaintiff's fees to a proportion of the trial recovery; the court "recognize[d] that even though [the recovery] was [$]17,000, doubled to 34, this could justify a large attorney fee award." Also, the court did not take into account whether plaintiff should have accepted a Code of Civil Procedure section 998 offer.

The court found the requested fee amount "was just not reasonable." The court "went through the bill and [it] decided what

4

[it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that [plaintiff's trial counsel] claim to have done. . . . [I]t added up to 225 hours." The court decided that $350 "is a reasonable hourly rate for the services that were done."

During argument, plaintiff's counsel made two main arguments. First, counsel argued the court could not reduce plaintiff's requested fee amount by more than the $83,206.05 reduction because that would constitute entertaining "objections not raised by [defendants]." Second, counsel argued that defendants had the burden to prove grounds for a fee reduction. The court took the matter under submission in order to review the billing records again. Ultimately, the court found that $95,900 was the reasonable amount of attorney fees for work performed on behalf of Mikhaeilpoor. After offsetting certain fees and costs that had been awarded to defendants, the net amount of awarded fees totaled $94,864.

## STANDARD OF REVIEW

An award of attorney fees under the Song-Beverly Act is reviewed for abuse of discretion. (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470 (*Goglin*).) The reviewing court presumes that the trial court's award is correct and infers that a request for fees is inflated when the trial court substantially reduces the requested amount. (*Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 840.) These rules apply because the experienced trial judge is best positioned to evaluate the professional services rendered in his or her courtroom. (*Ibid.*, citing *Goglin*, *supra*, 4 Cal.App.5th at pp. 470–471.) The trial court's decision must not be disturbed " 'unless [the Court of Appeal is] convinced that it is clearly wrong, meaning that it is an abuse of discretion.' " (*Graciano v. Robinson Ford Sales, Inc.*

5

(2006) 144 Cal.App.4th 140, 148 (*Graciano*), citing *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1052.)  Accordingly, this court's review of an order awarding attorney fees "must be highly deferential to the views of the trial court."  (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)  " 'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion or prejudice influenced the determination.' " (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.)

In particular, "the lodestar method vests the trial court with the discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation" (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449 (*Meister*)), and to determine the hourly rates that should be used in the lodestar calculus.  (*569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 436-437.)  The methodology embodied in this language is consistent with California's lodestar adjustment method of calculating attorney fees.  (See *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818 (*Robertson*).)  As the plain wording of section 1794, subdivision (d) makes clear, the trial court is "to base the fee award upon actual time expended on the case, as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the amount charged."  (*Robertson, supra*, at p. 817.)  In the case of contingency fee arrangements, "a prevailing buyer . . . is entitled to an award of *reasonable* attorney fees for time *reasonably expended by his or her attorneys*."  (*Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 105, fn. 6 (*Nightingale*), italics added.)

Under the lodestar adjustment methodology, the trial court must initially determine the actual time expended and then "ascertain whether under all the circumstances of the case the

6

amount of actual time expended and the monetary charge being made for the time expended are reasonable." (*Nightingale*, *supra*, 31 Cal.App.4th at p. 104.) Factors to be considered include, but are not limited to, the complexity of the case and procedural demands, the attorney skill exhibited and the results achieved. (*Ibid*.) The prevailing party and fee applicant bears "the burden of showing that the fees incurred were . . . 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.' " (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816; see *Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 926 ["[c]ourts have uniformly held that the party moving for statutory attorney fees or sanctions has the burden of proof"].) It follows that if the prevailing party fails to meet this burden, and the court finds the time expended or amount charged is not reasonable under the circumstances, "then the court must take this into account and award attorney fees in a lesser amount." (*Nightingale*, *supra*, 31 Cal.App.4th at p. 104.)

The amount of attorney fees awarded pursuant to the lodestar adjustment method may be increased or decreased. Such an adjustment is commonly referred to as a "fee enhancement" or "multiplier." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) The trial court is neither foreclosed from, nor required to, award a multiplier. (See *Montgomery v. Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1297 ["That figure *may* then be increased or reduced by the application of a multiplier after the court has taken into consideration other factors concerning the lawsuit"], citing *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321–324 (*Press*); see also *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1242 ["the trial court is not required to include a fee enhancement for exceptional skill, novelty of the questions involved, or other factors. Rather, applying a multiplier is discretionary."].) The Supreme Court has "set forth a number of

7

factors the trial court may consider in adjusting the lodestar figure. These include: '(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award.' " (*Press, supra,* at p. 322, fn. 12, italics omitted.)

Mikhaeilpoor argues that the trial court's ruling must be reversed because the court acted arbitrarily and failed to utilize the lodestar adjustment method to calculate reasonable attorney fees. The record belies this assertion.

In finding that $95,900 was the reasonable amount of attorney fees in this case, the trial court expressly invoked the lodestar method. Despite the trial court's clarity, Mikhaeilpoor mischaracterizes the analysis the court employed in order to create the illusion of error where there is none.

Mikhaeilpoor claims that the trial court improperly applied "across-the-board" percentage reductions in the fees claimed because it found that only 274 of plaintiff's claimed 595 hours of work were reasonably incurred and that a reasonable hourly rate for these reduced hours was $350 per hour. But the record, viewed in the light most favorable to the trial court's decision, does not show that the court made any "across-the-board" percentage reductions. Thus, plaintiff's reliance on the decision in *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88 (*Kerkeles*) and *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266 (*Mountjoy*) is misplaced.

*Kerkeles* concerned an appeal from an order awarding a plaintiff a fraction of the fees he requested following the settlement of his civil rights case. (See *Kerkeles*, *supra*, 243 Cal.App.4th at p. 92.) The plaintiff filed a motion seeking $1,448,397 in fees and

8

$75,255 in costs under section 1988 of title 42 of the United States Code and Code of Civil Procedure section 1021.5. (*Kerkeles*, *supra*, at p. 94.) This figure was based on 2,419.9 in attorney hours, with billable rates ranging from $425 to $650 per hour. (*Ibid.*) Plaintiff also requested a 1.5 multiplier to the lodestar amount. (*Ibid.*) The total amount requested was $2,350,848. (*Ibid.*) In response, defense counsel urged "a 50 percent reduction of the *total* lodestar amount." (*Id.* at pp. 95–96.) The trial court calculated the lodestar amount by multiplying the hourly rates by the full number of hours claimed, reaching a total of $873,615. The court *then reduced the total lodestar by 50 percent,* yielding $436,807.50 in attorney fees. (*Id.* at p. 97.)

In reversing, the appellate court deemed inadequate the trial court's explanation for its fee reduction. (*Kerkeles*, *supra*, 243 Cal.App.4th at pp. 101–102.) The Court of Appeal noted that while trial courts may make " 'across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure,' " they must set forth a " 'concise but clear' explanation of reasons for choosing a given percentage reduction." (*Id.* at p. 102.) In lieu of that, the trial court in *Kerkeles* had simply explained that the plaintiff's attorneys "expended far more time than a reasonable attorney could ever bill a paying client for." (*Id.* at p. 101.) Such reasoning did "not meet the federal criterion of a clear and specific explanation sufficient for meaningful appellate review." (*Id.* at p. 104.)

Similarly, in *Mountjoy,* the trial court awarded $59,334.60 in fees after the moving party sought $308,425, based on 760.70 hours of work billed at hourly rates ranging from $200 to $450. (*Mountjoy, supra*, 245 Cal.App.4th at p. 269.) In reducing the fees sought, the trial court explained: " 'Approximately half of [the Mountjoys'] pleading[s] amounted to unnecessary general legal argument warranting a reduction in the time it took to prepare that filing.

Approximately half of [the] "facts" [the Mountjoys] crafted in [o]pposition to the summary judgment motion . . . were improper. Perhaps most critically, well over 70% of the billing entries fall into one or more of the following categories: prohibitively vague "block billing," excessive time spent on the stated task (including but not limited to drafting the complaint and opposition to summary judgment motion and document review tasks discussed above), double billing where two attorneys completed the same task, attorney fees for non-attorney work, fees for filings that did not actually occur in this case, and fees for otherwise unreasonable tasks. [¶] In light of the foregoing and the other various reasons stated in [d]efendants' [o]pposition, the [c]ourt in its discretion reduces [the Mountjoys'] requested "hours worked" by 70% . . . to a more reasonable total of 228.21.' " (*Id.* at pp. 270–271.)

The Court of Appeal reversed, explaining that the trial court "determined that because well over 70 percent of the billing entries suffered from one or more flaws, it was appropriate to simply reduce the total hours claimed by 70 percent." (*Mountjoy*, *supra*, 245 Cal.App.4th at p. 281.) This approach was flawed because there did not appear to be any "reasonable basis for the conclusion that the total hours included in the 70 percent-plus time entries that were flawed in one or more ways was even reasonably close to 70 percent of the total time claimed." (*Ibid.*) For example, the flawed time entries may have only amounted to 50 percent of the total hours claimed; it was unclear whether the number of flawed billing entries were equivalent to the number of flawed hours. (*Ibid.*)

In contrast to *Kerkeles* and *Mountjoy,* the court here did not make an "across-the-board" percentage reduction of the attorney fees claimed. Rather, the court explained that its reduction resulted because the fees claimed "include[ed] dual billing of attorneys when the work of only one (at times) was reasonably

10

required" and trial counsel spent time on tasks that "should not have required anything more than [a] slight factual modification to [an] existing boilerplate." Plaintiff's counsel spent an unreasonably excessive amount of time dealing with this non-complex case. Thus, the trial court did not apply an arbitrary percentage (as in *Kerkeles)* or use flawed logic (as in *Mountjoy).* To the contrary, the court "went through the bill" multiple times and "decided what [it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that they claim to have done. . . . [I]t added up to 225 hours."

Dissatisfied with this explanation, Mikhaeilpoor questions how the trial court decided on the billing entries subject to reduction. Plaintiff would impose on the trial court the requirement of detailed explanatory orders. But this very same argument was rejected in *Mountjoy,* where the plaintiff faulted the court's explanation of its fee reduction because it " 'did not break out how many hours it thought were devoted to double billing the same tasks, work on non-attorney tasks, excessive billing for working on the complaint or summary judgment opposition, or work on documents that were not filed.' " (*Mountjoy, supra,* 245 Cal.App.4th at p. 280.)

Mikhaeilpoor also relies on *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106 (*Moreno*) to support her claim that the trial court inadequately explained "which tasks were cut or reduced and why." *Moreno,* however, is not binding on this court and it is distinguishable. (*Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1451 [indicating that federal decisions are persuasive rather than binding authority].) In *Moreno,* the plaintiff prevailed in a federal civil rights action and the district court imposed percentage reductions on plaintiff's requested fees. *(Moreno, supra*, 534 F.3d

11

at pp. 1112-1116.)  The Ninth Circuit Court of Appeals reversed. The federal district court did not identify those fees it thought duplicative or why it cut the costs claimed for trial preparation. (*Ibid.*)  But Moreno is not based on principles applied in California, where trial courts are not required to state "each charge they find to be reasonable or unreasonable, necessary or unnecessary. . . . A reduced award might be fully justified by a general observation that an attorney over[-]litigated a case." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101; see also *Ketchum, supra,* 24 Cal.4th at p. 1140 ["The superior court was not required to issue a statement of decision with regard to the fee award."].)  This view was recently reaffirmed in *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 37, footnote 6 (*Morris*), where the court explained that such a heightened standard of requiring courts to explain fee determinations is not appropriate "for appellate review of fee awards under the Song-Beverly Act." (*Ibid.*)

Mikhaeilpoor claims the trial court improperly tied the fee award to plaintiff's modest amount of recovered damages.  But the trial court disclaimed tying the amount of fees to the damages and the record, viewed in the light most favorable to the trial court, does not show that the court tied "the fee award to some proportion" of the damages award.  (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 37 (*Warren*).)

"[I]t is inappropriate and an abuse of a trial court's discretion to tie an attorney fee award to the amount of the prevailing [buyer's] damages or recovery in a Song-Beverly Act action, or pursuant to another consumer protection statute with a mandatory fee-shifting provision." (*Warren*, *supra*, 30 Cal.App.5th at p. 37.)  If the reasons for the reduction "include tying the fee award to some proportion of the buyer's damages recovery, the court abuses its discretion." (*Ibid.*)  But the two cases plaintiff invokes, *Graciano*,

12

*supra*, 144 Cal.App.4th at page 140 and *Warren*, *supra*, 30 Cal.App.5th at page 37, help demonstrate that the court here committed no error.

*Graciano* concerned a plaintiff's appeal from an order awarding her attorney fees following her post-verdict settlement with the defendant. (*Graciano*, *supra*, 14 Cal.App.4th at p. 145.) The trial court awarded $27,570; $235,000 in fees had been requested. (*Ibid.*) The trial court set the reasonable hourly rate at $250 per hour, which was based on a local rule setting hourly rates for expert witnesses, and applied that rate to the 367.6 hours of legal services expended by the plaintiff's attorneys. (*Id.* at p. 148.) After calculating the lodestar at $91,900, the court applied several multipliers, including a .3 negative multiplier " ' "to ensure the fee awarded is within the range of fees freely negotiated in the legal market place." ' " (*Ibid.*) As relevant here, the trial court explicitly tied its fee award to the plaintiff's damages recovery, reasoning: " '[T]he settlement amount for the [p]laintiff was $45,000 plus whatever fees, if any, the court might award. It is not uncommon for contingent fee agreements to require [p]laintiff to pay forty percent (more or less) of the recovery through trial to his/her counsel. If $45,000 represents [p]laintiff's sixty percent portion of the total settlement, then the forty percent fee portion, would be $30,000 ($75,000 x .40). In order to adjust the lodestar amount of $91,900 "to ensure the fee awarded is within the range of fees freely negotiated in the legal market place[,]" a ".30" factor should be applied. $91,900 times 3 yields $27,570, which amount is within the market place range of fees.' " (*Id.* at p. 162.) Under this rationale, the Court of Appeal perceived an improper downward adjustment based on the trial court's notion of an appropriate contingent fee percentage. (*Id.* at p. 164.)

In *Warren*, the trial court applied a 33 percent negative multiplier to plaintiff's requested lodestar fees. (*Warren*, *supra*,

13

30 Cal.App.5th at p. 24.)  The court noted " 'a disconnect' between the verdict amount of '$17,000' and the over $500,000 in requested attorney fees." (*Id*. at p. 33.)  The appellate court concluded that the negative multiplier was applied "with at least the partial goal of arriving at an attorney fee award that was roughly proportional to or more in line with [the plaintiff's] modest $17,455.57 damages award." (*Id*. at p. 39.)

Here by contrast, the trial court did not expressly or implicitly base any portion of its fee calculation on plaintiff's damage recovery.  Unlike the situation in *Graciano*, the trial court here did not calculate the amount of fees using a methodology that ensured the fee and damages awards were proportional; accorded with a market-rate contingency agreement, or created a relationship to the damages awarded.  Instead, the trial court "went through the bill and [it] decided what [it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that [plaintiff's trial counsel] claim to have done. . . . [I]t added up to 225 hours."

*Warren* is similarly distinguishable.  Here, unlike in Warren, the trial court was concerned because the $344,639 was shockingly unreasonable, *irrespective of the damages awarded.*  And, of course, the court here unequivocally disclaimed tying the fee award to the verdict amount because it "recognize[d] that even though [the recovery] was [$]17,000 doubled to 34, this could justify a large attorney fee award."

Also, instructive here is *Morris, supra,* 41 Cal.App.5th at page 24, where the court affirmed an order reducing requested fees by more than 40 percent in a Song-Beverly Act case.  In *Morris,* the trial court reduced plaintiff's requested fees by 42 percent—from $191,688.75 to $73,864.  On appeal, plaintiff argued—as Mikhaeilpoor does here—that the "trial court engaged in a prohibited proportionality analysis in setting the attorney fee

14

award." (*Id.* at p. 35.)  To support that claim, the plaintiff relied on selective portions of the hearing transcript where the trial judge stated, " 'So this is [a request for] $192,000 for a case that you settled for $85,000 and didn't go to trial.  Don't you think that just on its face, that's a little much.' " (*Ibid.*)  According to the plaintiff, the trial court "slashed the requested award by more than 42 percent, to $73,864, to render the award 'more in proportion to the $85,000 damages.' " (*Ibid.*)

The Court of Appeal disagreed, explaining that the trial court "did not suggest in any respect that the court reduced the attorney fee award based on the size of the settlement award." (*Morris*, *supra*, 41 Cal.App.5th at p. 37.)  To the contrary, the court "indicated a fee reduction was warranted because it was unreasonable to have so many lawyers staffing a [Song-Beverly Act] case that did not present complex or unique issues, did not involve discovery motions, and did not go to trial." (*Ibid.*)

Here, as in *Morris,* there is no indication that the trial court reduced fees based on the amount of damages awarded to plaintiff.  Rather, the court said a reduction of the requested fees was warranted because:  Plaintiff sought fees that "include[d] dual billing of attorneys when the work of only one (at times) was reasonably required"; her trial counsel spent time working on tasks that "should not have required anything more than [a] slight factual modification to [an] existing boilerplate"; and—overall—an unreasonably excessive amount of time was spent on a noncomplex matter.  Additionally, the trial court "went through the bill and [it] decided what [it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that [plaintiff's trial counsel] claim to have done. . . . [I]t added up to 225 hours."  The court did not engage in any proportionality analysis when it determined that $95,900 was the reasonable amount of attorney fees for the work performed.

15

Mikhaeilpoor claims the trial court based its fee award on an improper impressionistic basis.

In *Morris*, *supra*, 41 Cal.App.5th at page 37, the trial court stated during a fee motion hearing that the total proposed fee sought by the plaintiff was " 'a little much' considering the case settled for $85,000 and did not go to trial." (*Ibid*.) On appeal, plaintiff argued the court's statement "betrayed that at least one of the court's intentions in reducing the fee award was to bring it more in line with the settlement amount." (*Ibid*.) *Morris* rejected the plaintiff's argument that such trial court statements disclosed an alternate, prohibited motive for reducing plaintiff's proposed attorney fees.

Morris contends that, as in *Warren*, the trial court's comments during the hearing—suggesting that the total proposed fee was "a little much" considering the case settled for $85,000 and did not go to trial—betrayed that at least one of the court's intentions in reducing the fee award was to bring it more in line with the settlement amount. Given the court's clear expression in its final order of its reasons for the reductions, we will not speculate, based on a stray remark the court made at the hearing, that it had other, prohibited reasons that would require reversal. (See *Key v. Tyler* (2019) 34 Cal.App.5th 505, 539, fn. 16 [holding the court's "oral comments were not final findings and cannot impeach the court's subsequent written ruling"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 ["a judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances"].)

Mikhaeilpoor contends that the trial court impermissibly reduced fees below the level defendants proposed. Plaintiff argues "[a]ny objections to the fees and rates requested not made by BMW

16

should have been deemed waived by the trial court." This argument is meritless.

At the outset, defense counsel did not limit its request to reduce plaintiff's requested fees by only $83,206.05 as Mikhaeilpoor erroneously represents. Rather, defendants argued that plaintiff's fees should be reduced by *at least* $83,206.05. As such, Mikhaeilpoor's argument that the trial court reduced her fees below the level defendants proposed is based on a false premise.

To support its position that the trial court cannot reduce fees absent—or below the non-moving party's specific objection, plaintiff cites *Blum v. Stenson* (1984) 465 U.S. 886, 892, fn. 5, a federal case concerning fees in a federal civil rights action. In *Blum*, the defendant waived its challenge to a district court determination of reasonable hours billed by failing to submit any evidence challenging the accuracy and reasonableness of the hours charged. (*Ibid*.) In contrast to *Blum*, defendants here are not challenging the trial court's decision but showing it was not an abuse of discretion. And defendants did not waive any challenge to the fee award. Rather, defendants challenged fees in the trial court on grounds the trial court found applicable.

The extent of a court's discretion to unilaterally reduce fees is also apparent in *Morris*. There, appellant argued that fees were arbitrarily reduced in those circumstances where particular fee amounts claimed were not the subject of defense objections. (*Morris*, *supra*, 41 Cal.App.5th at pp. 38–39.) Notwithstanding this argument, *Morris* was "satisfied that the trial court did not abuse its broad discretion to determine the reasonable value of the professional services performed by the [appellant's] attorneys." (*Id*. at p. 40.)

Mikhaeilpoor also claims that the trial court abused its discretion by failing to award a multiplier. The argument rests on some of the same unmeritorious arguments advanced with

regard to the trial court's reduced lodestar award.  There was no abuse of discretion.

While the court's rationale for the lodestar reduction also influenced the denial of a multiplier, the court went further as to the multiplier issue, emphasizing that this was "not a complicated case," and the "request for a multiplier was specious."  These findings weigh on the issue of the " 'novelty and difficulty of the questions involved,' " which is a factor that trial courts may consider when a multiplier is requested.  (*Press*, *supra*, 34 Cal.3d at p. 322, fn. 12.)  This factor is separate from the trial court's finding that plaintiff's counsel litigated the case inefficiently. Moreover, even though the trial court did not specifically mention other factors open to consideration when a multiplier is under consideration, this court must presume that the trial court considered all factors in reaching its decision, "even though the court may not have mentioned or discussed them in its written ruling." (*Mountjoy*, *supra*, 245 Cal.App.4th at p. 277.)

Mikhaeilpoor argues that the attorney fee award is not supported by the evidence.  This claim has no merit.  The court has no authority to disturb the trial court's factual findings if they are supported by substantial evidence.  (*Meister, supra,* 67 Cal.App.4th at p. 453.)  Here, substantial evidence amply supports the trial court's fee award because the record demonstrates the relative simplicity of plaintiff's lawsuit and the inefficiency of her counsel's litigation activities.

The case concerned the simple issue of a purported engine defect in plaintiff's vehicle that was—in plaintiff's view—not fixed after multiple attempts.  To prevail, plaintiff's attorneys were only required to establish that their client purchased the vehicle, that it had a written warranty, that the vehicle had a defect, and that the vehicle was not repaired or replaced after the manufacturer had a reasonable opportunity to do so.  (CACI No. 3201.)  Plaintiff

18

was under no obligation to establish the cause of the purported defect.  (*Ibid.*; see *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1102, fn. 8 [rejecting manufacturer's claim that plaintiff buyer was required to prove cause of leak to establish remedy under the Song-Beverly Act].)  What follows is the trial court's altogether warranted conclusion that this was a noncomplex case.  The record shows that Mikhaeilpoor filed one discovery motion, propounded a single set of discovery, took three depositions (Jose Conde, defendants' person most qualified; and Luis Holguin, defendants' expert), and retained the services of a single expert, Dan Calef.  These were modest litigation efforts.

Additionally, the record demonstrates the highly inefficient manner in which plaintiff litigated her case.  Plaintiff's trial counsel claims "extensive experience with claims brought under the Song-Beverly [Act]."  Payam Shahian, the senior attorney among plaintiff's trial counsel, supervises the other attorneys in his firm, but does not "materially" get involved "*unless they involve complex legal issues*, reach significant stages of litigation, or require [his] assistance."  (Italics added.)  Shahian did not bill time to this case, confirming the case did not involve complex legal issues.  Yet, despite counsel's experience litigating "hundreds of automotive defect cases involving California's consumer protection statutes, including Song-Beverly," an astonishing array of 10 different attorneys litigated this case, with multiple attorneys staffed at different times.  Further, counsel's billing entries demonstrate a lack of efficiency in litigating the case and a lack of clarity in tasks performed.  This evidence supports the trial court's finding that plaintiff's counsel failed to act efficiently.

Similarly, plaintiff's lead counsel, Christine Haw, had experience with Song-Beverly Act claims.  Plaintiff sought hourly rates of $365 and $375 for Haw, but acknowledged that similar or more experienced attorneys had previously been awarded hourly

19

billable rates of $345 and $350.  As such, the trial court's award of a $350 hourly billable rate is supported by substantial evidence. Additionally, at the time of the hearing on the fee motion, Haw had been an attorney for approximately five years and had litigated "hundreds of automotive defect cases involving [the] Song-Beverly [Act]."  Notwithstanding, the court reasonably found that Haw did not leverage her experience to produce efficient litigation.  Haw personally billed more than 240 hours, and required the help of nine other attorneys at various points in the litigation.

Ultimately, the trial court was in the best position to evaluate the professional services rendered before it.  (*Ketchum, supra*, 24 Cal.4th at p. 1132.)  The court's decision is supported by substantial evidence.  There was no abuse of discretion.

## DISPOSITION

The order awarding fees is affirmed.  Respondents are awarded their costs on appeal.


                                        WHITE, J.*

We concur.


            ROTHSCHILD, P. J.



            CHANEY, J.

---

21

Filed 4/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LORIK MIKHAEILPOOR, | B293987 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC611197) |
| v. | |
| BMW OF NORTH AMERICA, LLC, et al., | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

The opinion in the above-entitled matter filed on April 1, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ROTHSCHILD, P. J.          CHANEY, J.          WHITE, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.