Filed 8/30/22  Canyon View Limited v. Lakeview Loan Servicing CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CANYON VIEW LIMITED, | B311313 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC057181) |
| v. | |
| LAKEVIEW LOAN SERVICING, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Reversed with directions.

Greines, Martin, Stein & Richland, Robin Meadow and Jeffrey Gurrola for Plaintiff and Appellant.

McCarthy & Holthus and Melissa Robbins Coutts for Defendant and Respondent.

Plaintiff Canyon View Limited (Canyon View) appeals from an award of attorney fees in its favor against defendant Lakeview Loan Servicing LLC (Lakeview), contending that the amount of the award was erroneously inadequate. The court entered the fee award on remand from *Canyon View Ltd. v. Lakeview Loan Servicing, LLC* (2019) 42 Cal.App.5th 1096 (*Canyon View I*). *Canyon View I* decided four consolidated appeals, one from *Canyon View Ltd. v. Lakeview Loan Servicing, LLC* (Super. Ct. L.A. County, No. PC057181) (the Lakeview action) and three from three similar lawsuits Canyon View filed against three other defendants, respectively, regarding three different mobilehome properties. Each appeal challenged an order denying Canyon View attorney fees after the underlying action was concluded in Canyon View's favor. In *Canyon View I*, we concluded Canyon View was statutorily entitled to attorney fees in the Lakeview action and two of the other actions, and directed the trial court to determine the reasonable amount of attorney fees following remand. The same counsel represented Canyon View in all four actions and in *Canyon View I*. The four actions were separate, but the judicial officer presiding over the Lakeview action proceedings also presided over another of the four actions (before *Canyon View I* and on remand).

Canyon View contends the trial court abused its discretion when it awarded 25 percent of the fees Canyon View requested for work of its trial counsel before judgment and in connection with the appeal in *Canyon View I*. We agree. In calculating the fee award, the court discounted the fees Canyon View sought by applying an across-the-board quartering approach, because the billing records and related declarations of trial counsel Canyon View provided did not satisfy the court that certain of trial

2

counsel's fees were solely attributable to work on the Lakeview action rather than all four matters.

We conclude the court's quartering approach was arbitrary in that it was not logically related to correcting the potential overlap that concerned the court. Non-arbitrary alternative approaches to assessing the reasonable amount of fees were available that would not have required the court to accept the accuracy of the billing records or the credibility of counsel's declarations.

Further, we also agree with Canyon View that the court erred in failing to order reimbursement of the fees from work performed by Canyon View's additional counsel, the Law Offices of Edward A. Hoffman, on *Canyon View I*. The court identified no reason it could not rely on the declaration of Edward Hoffman, nor did it cite any issues with the amount of the fees his firm sought. Our independent review of the record likewise identifies no basis for concern. Indeed, the record suggests that the court's failure to order these fees was an oversight, which we correct on appeal.

Accordingly, we reverse the court's order with directions that the trial court enter a new order awarding (1) the amount of fees associated with secondary counsel's work on the Lakeview action portion of *Canyon View I*; and (2) a reasonable amount of attorney fees for the work of trial counsel prejudgment and in connection with *Canyon View I*.

## FACTS AND PROCEEDINGS BELOW

### A.    The Lakeview Action and *Canyon View I*

At a public sale following abandonment proceedings under the California Mobilehome Residency Law (Civ. Code, § 798

3

et seq.) (the MRL), Canyon View purchased a mobilehome in which Lakeview held a lien. Under the MRL, the purchase of a mobilehome via such a proceeding extinguishes all then-existing liens and interests in the home. After Canyon View acquired title in this manner, Lakeview nonetheless recorded documents that asserted a lien on and a security interest in the home. Canyon View filed a complaint against Lakeview alleging that such recordations created a cloud on title. The parties resolved the action in Canyon View's favor before trial via a stipulated judgment.

The MRL entitles the prevailing party in an action "arising out of" the MRL to reasonable attorney fees. (Civ. Code, § 798.85.) The court denied Canyon View's initial motion for attorney fees on the basis that the Lakeview action did not arise out of the MRL, and that even if it did, no amount of attorney fees would be reasonable to award Canyon View in any event.

In *Canyon View I*, we reversed, holding the Lakeview action did arise out of the MRL, and that therefore the MRL entitled Canyon View to attorney fees as the prevailing party.

### B.   Canyon View's Post-*Canyon View I* Motion for Attorney Fees

On remand from *Canyon View I*, Canyon View sought attorney fees falling into four time frames: (1) fees for work beginning in January 2016, when Canyon View first reached out to Lakeview and asked it to remove documents clouding title, and continuing through judgment on April 5, 2017 (the prejudgment work); (2) postjudgment fees for work between April 6 through September 13, 2017, mainly relating to the first (unsuccessful) fee motion; (3) fees for work on the *Canyon View I* appeal; and (4) fees for litigating the fee motion that is the subject of

4

this appeal. Canyon View challenges the amounts of attorney fees the court awarded for the first and third categories only (prejudgment work and *Canyon View I* appeal work).[1]

The work for which Canyon View sought to recover attorney fees was performed by two firms: Norminton, Wiita & Fuster (NWF), counsel of record for Canyon View in the Lakeview action; and the Law Offices of Edward A. Hoffman, which began work on the matter during the *Canyon View I* appeal, and became lead counsel when NWF ceased operations.

To support its request for fees, Canyon View submitted declarations of Thomas M. Norminton of NWF, NWF billing records, and a declaration of Edward Hoffman.

### 1. The Norminton declaration

The Norminton declaration explained that NWF was a small firm, and that Norminton supervised all work and "supervised the preparation of every bill for every client." NWF handled several other matters for Canyon View, three of which are of note. Specifically, NWF had filed actions against, respectively, three entities other than Lakeview, seeking to quiet title to other mobilehomes located in Canyon View's mobilehome park on the same legal basis as that raised in its action against Lakeview. Like the mobilehome at issue in the Lakeview action, Canyon View had purchased the properties at issue in these three other actions via MRL-regulated public sales. Also like the Lakeview action, Canyon View alleged that each of the defendants had recorded documents regarding the subject

---

[1] We will summarize the parties' and court's discussion below of the other fees and costs at issue in the motion only as necessary to address the issues raised on appeal.

property that created a cloud on title, based on lien and/or security interests, although these interests had been extinguished pursuant to the MRL. Also like the Lakeview action, these actions were all resolved via stipulated judgment in Canyon View's favor before trial. We shall refer to these other actions as the BONY action, the Ocwen action, and the Household action.[2]

Despite the similarities in the general fact pattern and legal issues involved across the Lakeview, BONY, Ocwen, and Household actions, the facts of each matter were distinct—different loans by different banks to different defaulting mobilehome owners. The actions were separate at the trial court level, and divided between two trial judges. We consolidated the appeals from the denial of attorney fees in all four cases in *Canyon View I* based on their involving the same legal issue: whether each action "aris[es] out of" the MRL.

The Norminton declaration addressed how Canyon View had identified the fees associated with work on the Lakeview action, as opposed to the BONY, Ocwen, or Household actions. In it, Norminton explained that before July 2016, fees incurred in the Lakeview case were billed to a general matter number, but all Lakeview-related entries were explicitly identified in the description as pertaining to Lakeview, either via reference to the lot number at issue or the owner of the lot. Norminton declared that this allowed NWF to identify entries pertaining to the Lakeview action, and that all entries relating to cases other

---

[2] The defendants in these other actions are: Bank of America, N.A. and The Bank of New York Mellon (BONY); Ocwen Loan Servicing, LLC and Power Default Services, Inc.; and Household Finance Corporation of California.

than Lakeview were excised from the billing records submitted to the court, based on which Canyon View calculated the amount of fees it requested for work before July 2016: "Those entries [unrelated to the Lakeview action] have been redacted . . . and the associated fees and costs have been deducted from the total [fee amount requested]."

Beginning July 2016, Canyon View's attorneys maintained a separate case file for the Lakeview action and billed all Lakeview-related work to that matter. Entries billed to this matter formed the basis for Canyon View's fee request amount for NWF work starting in July 2016.

The declaration further recognized that some work performed in connection with the *Canyon View I* appeal related to all four cases. The declaration explained that "[f]or this reason, [Norminton] instructed the attorneys and paralegals in the firm to apportion their time among the four appeals for tasks on common issues and separately bill their time to one case on matters not in common with the other three cases." To preserve the separateness of the four cases, "[a]fter the consolidation [of the four appeals], separate monthly Fee and Cost Statements were prepared for Canyon View on each of the four [c]onsolidated [a]ppeals, just as these Fee and Cost Statements had been prepared separately for each case in the litigation prior to the consolidation."

The Norminton declaration thus attested to the billing records submitted in support of the fee request reflecting work specific to, or apportioned to, the Lakeview action, and excluding any work on the related Ocwen, BONY, and Household actions.

7

### 2. NWF billing records

The NWF billing records Canyon View submitted to support the fee request included entries that, although identified with the post-July 2016 Lakeview action matter number or otherwise identified as associated with the Lakeview action, did not appear to be related to work on the Lakeview action. For example, the billing records reflected fees for tasks involving JPMorgan Chase Bank, Kondaur Capital, Ocwen, and California Reconveyance Company, and none of these entities is related to the Lakeview action.

The records also included entries billed for NWF work reviewing and analyzing affirmative defenses in the answer months before any answer was filed in the Lakeview action, and fees for trial preparation and demurrer work after the stipulation for judgment in the Lakeview action had already been entered. Other examples include entries for discovery work before Lakeview had been served with the complaint, and after the parties had agreed to a stipulated judgment; entries for "[r]esearch[ing] other clients['] files to locate opposition to motion for judgment on the pleadings," although no motion for judgment on the pleadings was filed in the Lakeview action; a March 2017 entry for work on "points for argument on [m]otion to [c]ompel discovery," even though the motion to compel in the Lakeview action had already been decided in January 2017; and an entry for work "[p]repar[ing] notes re[garding]: points to make in opposition to the demurrer" several weeks after Canyon View's opposition had been filed and the demurrer had already been decided in the Lakeview action.

### 3. The Hoffman declaration

The Hoffman declaration indicated that Hoffman had "not yet prepared an invoice for Canyon View," in part due to COVID-19 pandemic work disruptions, and Canyon View did not submit billing records for Hoffman's work in support of its fee motion. Instead, Hoffman's declaration described his work on the *Canyon View I* appeal, which totaled 46 hours, and indicated that "[m]uch of the work applied to all four cases. The portions that were case-specific were spread quite evenly among the four cases, so I apportion[ed] 11.5 of these 46 hours to the Lakeview case." The Hoffman declaration also described the total amount Hoffman expected to bill for his work on the second fee motion following the appeal, which totaled 22 hours. Hoffman's billing rate was $375.00 per hour, meaning the fees Hoffman attributed to Lakeview's portion of the *Canyon View I* appeal were $4,312.50 and the fees he attributed to the second fee motion were $9,375.

### C. November 2020 Order Continuing Hearing on Attorney Fees Motion

In a November 4, 2020 order, the court rejected Lakeview's argument, made in opposing Canyon View's fee motion, that fees Canyon View incurred in the Lakeview action after Lakeview recorded a reconveyance of title were not necessary to clear title and thus were not recoverable under the MRL. The court characterized this argument as an attempt to relitigate the "arising out of" issue decided in *Canyon View I*, and identified the sole issue before the court as determining the specific amount of reasonable fees that Canyon View could recover under the MRL.

The court determined that the lodestar method of calculating a reasonable fee award applied, and that the hourly rates claimed by NWF and Hoffman were reasonable.

9

The court determined it needed additional information to address Lakeview's argument that Canyon View's fee request included specific entries for NWF's work that were "for unrelated entities," unnecessary discovery, "excessive appellate fees, and other examples of duplicative entries" and that this " 'excessive' billing undermine[d] the overall 'credibility' of the requested fees." Examples of these entries, which Lakeview also highlighted in its briefing below, are summarized above. (See Factual Background *ante*, part B.2.) The court explained that Lakeview had raised "valid arguments on grounds of both vague and questionable billing entries, as well as the necessity of certain action," and that Canyon View had "barely addressed" this argument in its reply brief. With regard to NWF's fees, the trial court stated that the court "remains unable to determine whether the fees requested seek duplicative recovery of attorney fee costs, and whether the entries pro rata separate the appellate brief costs." The trial court therefore continued the motion hearing and "order[ed] further briefing addressing[, inter alia] . . . a pro rata accountability for the appellate work handled by moving counsel [Norminton/NWF], not appellate counsel." The court further instructed that the briefing should "focus on . . . the applicability of the requested fees relative to any and all work done as to Lakeview ONLY," and that Canyon View was to "submit supplemental declarations and/or billing statements."

10

### D. Parties' Supplemental Submissions

Canyon View provided a supplemental Norminton declaration, based on Norminton's "review[ing] again the files in this case, and the month-by-month summary of [NWF's] bills as well as the monthly bills themselves" that had been attached to the previous fee motion. The supplemental declaration noted, as had the initial declaration, that the appeal-related fees NWF sought in the motion were apportioned before being submitted to the court, and thus the requested fees related to only the Lakeview action.

In its supplemental briefing and declarations, Canyon View acknowledged, however, that it had erroneously included in its fee request fees for certain NWF work that was not attributable to the Lakeview action. It therefore adjusted its fee request to remove entries totaling $2,116.45.

The following table summarizes Canyon View's request for fees via the post-remand fee motion, as adjusted in the supplemental submissions Canyon View provided the court:

11

| | |
|---|---|
| Prejudgment work | $63,935.97 |
| First fee motion | $27,252.19 |
| *Canyon View I* (Lakeview action portion) | $78,982.63 |
| Downward adjustment for erroneous entries in NWF bills | ($2,116.45) |
| Hoffman fees | $13,687.50 (comprised of $4,312.50 for work on *Canyon View I* and $9,375 for work on the second fee motion) |
| Second fee motion | $5,412.38 |
| NWF total | $173,466.70 |
| Grand total | $187,154.20 |

In its supplemental opposition, Lakeview argued that the admitted inaccuracy of the original Norminton declaration and fee motion—namely, their representation that the NWF fee request was based solely on fees attributable to the Lakeview action, when in fact numerous entries in the supporting documentation belied this—"undermine[d] the credibility of [Lakeview's] fee statements as a whole," and that Canyon View had thus failed to meet its burden of providing the court with accurate time records to support its fee request. Lakeview more specifically argued Canyon View had not provided the records necessary to establish that the fee request was for work on the Lakeview action only. Lakeview did not, however, argue that

the bills Canyon View had submitted reflected all work for all four matters.

### E.  March 4, 2021 Hearing and Final Fee Award

In its fee award that is the subject of this appeal, the court acknowledged that Canyon View's supplemental submissions "provide[d] further clarification of the submitted billing entries for the litigation leading to judgment, appeal and current motion to recover fees." As to fees associated with the *Canyon View I* appeal, however, the court noted that "[w]hile counsel admits that not all fees were incurred equally given the uniqueness of the four defendants, the court finds the substantially overlapping arguments [on appeal] renders precise determination impractical. The court therefore splits the appellate fees four ways," awarding $19,589.27, a quarter of the NWF fees associated with *Canyon View I*.

As to fees for prejudgment work, "the court cite[d] to the prior raised concerns" and excerpted the portion of its November 4, 2020 order describing these issues, including certain apparently " 'superfluous entries' " and concerns about duplicative recovery of fees across the four actions. The court concluded that "[e]ven with better clarification [via Canyon View's supplemental submissions], the court still finds the requested [prejudgment work] fees excessive. While some of the discovery and demurrer work expressly applie[d] to the Lakeview . . . [action], the court remains unable to determine how much crossover work actually applied to the other defendants. Given the similarities of the four actions and the inability to sufficiently parse out the required, unique work, the court divides the previously represented balance . . . [of fees requested] into quarters thereby reducing potential duplicative

13

recovery on potential subsequent motions against the remaining three defendants as well. The division also reduces the questionable entries raised in the prior order . . . by [Lakeview]."

Applying this approach, the court awarded a total of $63,701.59 in fees to Canyon View, which included $19,870.94 for prejudgment work—essentially a quarter of the NWF fees requested for this period—and $19,745.66 for fees associated with the *Canyon View I*—essentially a quarter of the NWF fees requested for work on the appeal, plus fees for work on the first and second fee motions, which Canyon View does not challenge. Because the court's award of fees associated with the *Canyon View I* work was based solely on this quartering of the amounts reflected in NWF bills, the court appears to have awarded no separate amount based on Hoffman's work on the appeal. The court also awarded $18,000 for work on the first attorney fee motion and $6,241.38 for work on the second attorney fee motion.

Canyon View timely appealed the March 4, 2021 order awarding fees and costs.[3]

---

[3] The same judicial officer decided both the fee motion in the Lakeview action and the fee motion in the BONY action. In the BONY fee award, the court awarded Canyon View the same amounts for prejudgment work and work on *Canyon View I* that it did in the Lakeview action, "[c]onsistent with the prior [i.e., Lakeview action] order." The validity of the court's fee award in the BONY action is the subject of a separate appeal. (See *Canyon View Limited v. The Bank of America N.A.* (B312259, app. pending).) The validity of the BONY fee award thus is not presently before us. Whether and in what way our opinion in the instant appeal affects the validity of the fee award in the BONY action is an issue the BONY parties may address in that appeal.

## DISCUSSION

"To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138 (*Ketchum*).)  We thus review such determinations for an abuse of discretion.  " ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260−261.)

Canyon View argues the court abused its discretion in (1) awarding only a quarter of the NWF attorney fees Canyon View requested for NWF's work on the Lakeview portion of the *Canyon View I* appeal and the firm's prejudgment work in the Lakeview action, and (2) declining to award any of the requested fees attributable to Hoffman's work.  We address each argument in turn.

### A.    NWF's Fees for Prejudgment Work and Work on *Canyon View I*

In challenging the court's "quartering" approach, Canyon View argues (1) the court's approach was based on an understanding of NWF's billing records wholly unsupported by the evidence, (2) the court's 75 percent reduction bore no relationship to the court's concerns about the supporting documentation, and (3) the court acted outside the scope of remand in applying this approach.

15

**1. The challenged fee analysis was not based on factual determinations unsupported by the record, but rather on the court's conclusion that Canyon View failed to provide credible evidence that the fees requested were properly recoverable**

Canyon View argues that "[t]he trial court's foundational error was its belief that the documentary evidence Canyon View submitted—declarations, billing records, and invoices—represented Canyon View's fees for litigating all four cases involved in *Canyon View I*" and that this characterization is unsupported by the evidence. (See *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 693 ["an abuse of discretion may be found when the court proceeds upon a mistaken premise or a factual finding not supported by substantial evidence"].) But the court did not conclude that the fees requested were for all work performed for all four cases. Rather, the court concluded the documentary evidence Canyon View had provided to support its fee request could not reliably establish that those fees were *only* for work attributable to the Lakeview action.

In the March 4, 2020 and November 4, 2020 orders, the court questioned the reliability of NWF billing records based on various Lakeview-action-related entries in the NWF bills including work that could not have been for the Lakeview action. Despite these inaccuracies, the initial Norminton declaration also characterized the bills as including only work for the Lakeview action. After the court called into question the credibility of both the NWF billing records and the Norminton declaration—specifically with respect to the issue of whether the fee request reflected only work on the Lakeview action—the court did not have before it what it regarded as sufficiently reliable evidence

16

to conclude what portion of the requested fees was truly recoverable in the Lakeview action.  "[T]he court remain[ed] unable to determine how much crossover work actually applied to the other defendants" and unable "to sufficiently parse out the required, unique work" in the Lakeview action.

To address this, rather than deny recovery for fees associated with specific entries, the court opted to quarter the fees requested to assure there was no overlapping recovery across the four related actions.[4]

> ## 2. The court did not abuse its discretion in finding not credible the evidence that the NWF fees requested for prejudgment work and *Canyon View I* were all attributable to the Lakeview action

We generally defer to credibility determinations below. (See *Guidici v. Guidici* (1935) 2 Cal.2d 497, 503; *Lenk v. Total-Western, Inc. (*2001) 89 Cal.App.4th 959, 968; *City of*

---

[4] We reject Canyon View's argument that the court necessarily must have based its quartering approach on a factual determination that the NWF documentation included fees from *all* four actions.  As noted, the court never made such a finding, nor expressed a view supporting Canyon View's assertion. (Cf. *Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 845 [" '[w]hen the court states its reasons [for a fee award] explicitly, we cannot infer' " a different reason as a basis for affirming the award].)  It did, however, question the sufficiency of the evidence Canyon View provided to determine the extent to which the fee request was only for work on the Lakeview action.  We disagree with Canyon View that credibility concerns about the supporting evidence and concerns that the fee request includes fees for work on other cases are mutually exclusive.

*Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1385 [" '[a]n appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact' "].) When live witness testimony is at issue, the trial court is uniquely qualified to assess credibility, because the trial court—unlike an appellate court—has observed a witness's demeanor and heard a witness's voice while testifying. A trial court has similarly unique qualifications to assess the credibility of attorney declarations and billing records submitted in support of a fee request when the judicial officer deciding the fee request has also presided over the matter in which the requested fees were incurred. Such is the case here. Under this deferential standard, we find no error in the trial court's credibility assessment of the Norminton declarations and NWF billing records. The record reflects—and Canyon View admits—that some of the work itemized in the bills on which Canyon View based its initial fee request was not done for the Lakeview action, despite the initial Norminton declaration swearing that the contrary was true. We cannot conclude the trial court erred in concluding the billing records did not reliably isolate work only on the Lakeview action—even after the obviously erroneous entries had been excised.

### 3. The court's "quartering" approach was an abuse of discretion

Here, based on its concern that the requested fee amount was excessive in that it includes fees for other actions, the court chose to exercise its "broad discretion to adjust the fee downward" by awarding a quarter of the amount requested for NWF's prejudgment work and work on *Canyon View I*. (*Ketchum, supra*, 24 Cal.4th at p. 1138; accord, *Christian Research Institute v.*

18

*Alnor* (2008) 165 Cal.App.4th 1315, 1321–1322, 1325–1326 (*Christian Research Institute*).) But the court's concern about the requested fees including fees incurred in other actions is not a "reasonable basis" for the quartering approach the court applied to calculate the fee award. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 ["[there must be] a reasonable basis for the trial court's reduction of the lodestar amount"]; see *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 281 (*Mountjoy*) [an across-the-board "reduction in hours claimed" based on flawed entries, "without any correlation shown to the number of hours claimed on the flawed entries, is arbitrary"].) The Court of Appeal reached a similar conclusion in *Mountjoy* and reversed the fee award at issue as arbitrary. (*Mountjoy, supra*, at pp. 280–281.) *Mountjoy* describes the trial court's erroneous approach as follows: "Essentially the [lower] court . . . determined that because well over 70 percent of the billing entries suffered from one or more flaws, it was appropriate to simply reduce the total hours claimed by 70 percent." (*Id.* at pp. 280–281.) The Court of Appeal held that, under this approach, there was "no reasonable basis for the conclusion that the total hours included in the 70 percent-plus time entries that were flawed in one or more ways was even reasonably close to 70 percent of the total time claimed. . . . The trial court has broad discretion in ruling on a fee request, but that ruling cannot be arbitrary, and a 70 percent reduction in hours claimed based on the conclusion that more than 70 percent of the time entries are flawed, without any correlation shown to the number of hours claimed on the flawed entries, is arbitrary." (*Ibid.*)

19

The same lack of correlation rejected in *Mountjoy* exists between (1) the court's concern that the NWF bills at issue could contain not just fees for work on the Lakeview action, but at least some fees for work on one or more of the three related cases as well, and (2) the court's quartering reduction of the total requested fees. Whatever fees that request included, it did not include the total NWF fees for all prejudgment and *Canyon View I* work in all four cases. There is thus "no reasonable basis for the conclusion that the total hours included in the [25 percent of NWF's requested prejudgment and Canyon *View I* fee amount] . . . was even reasonably close to [25] percent of the total" NWF fees in all four cases for prejudgment work and *Canyon View I* work. (See *Mountjoy*, *supra*, 245 Cal.App.4th at p. 281.) In short, it is not "permissible for a trial court—[even] when faced with a plethora of flawed attorney time entries—to engage in an across-the-board reduction of hours of the kind the trial court imposed here." (*Id*. at p. 280.) In doing so here, the court abused its discretion.

Lakeview also defends the court's award and approach as based in part on the fact that work NWF performed after Lakeview recorded a reconveyance and quitclaim deed was unnecessary to clear title, and thus not reasonably recoverable under the MRL. There is no reading of the court's orders that permits the inference that the court used this as a basis for any aspect of its fee award. The court expressly rejected this argument as inconsistent with *Canyon View I*. Nor did the court identify or question any charges based on their occurring after any date associated with that reconveyance or quitclaim deed. In any event, even if this were the explanation for the trial court's 75 percent reduction, there would still be no reasonable

basis for concluding that such an across-the-board reduction would address that concern.  It thus does not provide a basis for affirming the court's award.

We note, however, that the court is free to consider Lakeview's recording a reconveyance and quitclaim deed in assessing what work was reasonably necessary in the Lakeview action, and, as a function thereof, the amount of fees Canyon View may recover.  In the unpublished portion of *Canyon View I*, we similarly indicated that "[w]e share the trial court's concerns that the proceedings may have been more extensive than necessary, given that, for example, proceedings in the Lakeview action continued for several months after Lakeview filed a post-litigation reconveyance and quitclaim deed."  Given that the court clearly did not consider whether these recordations rendered any portion of the fee request unreasonable, however, we decline to consider this factual issue for the first time on appeal.

4.    **The record contains a non-arbitrary basis for determining a reasonable amount of attorney fees for NWF's prejudgment and *Canyon View I* work**

That the court's approach reflects an abuse of discretion does not end our inquiry.  As the party seeking fees and costs, Canyon View " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.)  If there was no basis in the record for the court to take a non-arbitrary approach to assessing fees, then the court would be within its discretion to simply deny fees altogether.  We must therefore determine whether the record contains sufficient support for the court to have awarded some

21

amount of reasonable fees for NWF's prejudgment work and work on *Canyon View I* that is not arbitrary and instead bears a reasonable relationship to the work performed.

To this end, Canyon View argues that the court could have subtracted from the fee request fees for those entries that clearly reflected work on other cases. But once we accept—as we must—the court's credibility concerns about NWF's billing, such an entry-by-entry reduction does not make sense, because it assumes all generally phrased entries that are not obviously unrelated to the Lakeview action were indeed for Lakeview work. Many of the entries in NWF's fee statements are stated in general terms, making it impossible to identify whether the fees were incurred in the Lakeview action or one of the related cases consolidated with the Lakeview action appeal in *Canyon View I*. Moreover, "[i]t is the obligation of the party (and attorney) seeking the fee award 'to prune the fee request to comply with the law,' and the party (and attorney) cannot 'transfer that responsibility onto the trial court.' " (*Mountjoy, supra*, 245 Cal.App.4th at p. 280; see *Christian Research Institute, supra*, 165 Cal.App.4th at p. 1329 ["counsel may not submit a plethora of noncompensable, vague, block-billed attorney time entries and expect particularized, individual deletions as the only consequence"].) Given that it is undisputed Canyon View erroneously attributed work to the Lakeview action in several of its billing entries, it is not unreasonable for the court to question whether other billing entries phrased in general terms might likewise have been incorrectly attributed to the Lakeview action.

An alternative approach to determine a reasonable fee award was possible on the record before the trial court, however, even given its concern about certain billing records. As for the

22

prejudgment work, the judicial officer deciding the fee motion in the Lakeview action was the same officer that had presided over all other proceedings in the case, and thus the court had firsthand knowledge of the procedural history of the case and the prejudgment work NWF would have needed to perform to obtain the result it did. The court could have determined a reasonable amount of attorney fees for that prejudgment work, and awarded that amount. For example, the court might determine that the Lakeview action required NWF to, inter alia, prepare a complaint, investigate potential affirmative defenses, litigate a demurrer with a certain number of issues, and prepare and respond to various other specific motions. The court could then assess, based on its general experience as well as its experience with the Lakeview action specifically, whether the work was necessary and, as to the necessary work, the number of hours an attorney or attorneys might reasonably need to complete each task. Then, the court could multiply the number of hours by the NWF hourly rate—the reasonableness of which the court did not question—to calculate the reasonable amount of fees for these tasks.[5]

As to NWF's fees for *Canyon I*, the court could have determined the amount of work reasonably necessary for NWF to prepare for, and argue, that appeal as a whole for all four cases. In so doing, the court could take into account the fact that NWF had the assistance of co-counsel Hoffman, and the number

---

[5] We note that the example calculations provided above are offered solely for the purpose of explaining the analysis we are describing. We leave it to the trial court upon remand to exercise its broad discretion in selecting a method to determine reasonable fees.

of hours of work Hoffman put into preparing for the appeal. (As we discuss in Discussion part B, *post*, the court never questioned the credibility of Hoffman's estimates of the work he contributed to *Canyon View I*.) The court could have then determined a reasonable amount of attorney fees for that work, and awarded a quarter of that amount. For example, the court could estimate the number of hours it would reasonably take an attorney to prepare the *Canyon View I* consolidated briefing and to prepare for consolidated argument, based on the number of issues presented in the appellate briefing and on the court's preexisting familiarity—gained through review of the *Canyon View I* opinion on remand—with the nature of these issues. The court could then multiply this number of hours by the NWF hourly rates and award a quarter of that amount. This approach takes advantage of the trial court's familiarity with the case, on which appellate courts typically rely in reviewing the reasonableness of attorney fees awards.[6]

## B. The Court Erroneously Failed to Award Fees Based on Hoffman's Work on *Canyon View I*

Canyon View also challenges the court's apparent failure to award any fees based on the work of attorney Hoffman. Canyon View refers to Hoffman as "appellate counsel," but challenges

---

[6] Because we reverse with instructions for the reasons we discuss more thoroughly in the preceding and following sections, we need not consider Canyon View's additional argument that the trial court's approach to calculating the fee award is void, because it was not "in accordance with the direction of" this court in *Canyon View I* for proceedings following remand. (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.)

24

the court's failure to award fees for his work both on the *Canyon View I* appeal and the second fee motion following remand.

As to Hoffman's work on the second fee motion, the court determined generally that $6,241.38 was a reasonable amount of fees for all work on that motion, and awarded that amount. Canyon View does not challenge this finding, and thus cannot challenge the court's approach to Hoffman's fees for same.

As to Hoffman's work on the *Canyon View I* appeal, Canyon View obviously does challenge the court's overall approach to fees for *Canyon View I* work, as discussed above. We note that the credibility concerns expressed by the court stem entirely from NWF billing records and the Norminton declarations. The court noted no such concerns with Hoffman's description of the manner in which he apportioned the hours he worked on the consolidated *Canyon View I* appeal, nor does Lakeview identify any errors, inaccuracies, or implausibility in this description. The court did not mention Hoffman's fees at all in the final award, and mentions Hoffman in the November 4, 2020 order only to the extent it determines his hourly rate is reasonable. We decline to assume that the court found Hoffman's declaration not credible based on errors in another attorney declaration. The two attorneys are from separate firms, and nothing in the record would support imputing the court's concerns about the records of one to the records of the other. Moreover, the court requested supplemental briefing and evidence to address its concerns about *NWF's* fees for work on other cases being included in the fee request; it did not request additional submissions addressing Hoffman's fees. This suggests the court did *not* have concerns about the reliability of Hoffman's allocation of fees between matters. Nor do we find any basis in the record for such

25

concerns. It thus appears that the court inadvertently failed to award any fees based on Hoffman's work on *Canyon View I*. To the extent the court's failure was not inadvertent, and it instead rejected as not credible Hoffman's declaration that 11.5 hours of the time he reasonably spent working on *Canyon View I* can be allocated to the Lakeview action, the court abused its discretion.[7] (See *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396 [concluding the trial court "abused its discretion in rejecting wholesale counsels' verified time records . . . in the absence of a clear indication the records are erroneous"]; see *Hanna, supra,* 36 Cal.App.5th at p. 507 [abuse of discretion to deny fees based on a factual finding unsupported in the record].)

---

[7] To the extent the court concluded that its quartered version of NWF's appellate fees was in lieu of any recovery for fees charged by Hoffman for *Canyon View I*, such an approach requires an implicit finding that Hoffman's fees for work on *Canyon View I* were either unreasonable or excessive, which is " 'entirely lacking in evidentiary support' " and would thus also be an abuse of discretion. (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507 (*Hanna*).)

## DISPOSITION

The March 4, 2021 order on Canyon View's fee motion is reversed, and the court is instructed to enter a new order awarding Canyon View (1) a reasonable amount of attorney fees for NWF's prejudgment work in the Lakeview action and NWF's work in connection with *Canyon View I* attributable to the Lakeview action, plus (2) $4,312.50, which reflects the portion of attorney Hoffman's fees for work on the *Canyon View I* appeal attributable to the Lakeview action.

The parties are to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.

27